UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RUSSELL DAVENPORT,

                Plaintiff,

        v.

EPISCOPAL HEALTH SERVICES, INC., ST.
JOHN'S EPISCOPAL HOSPITAL SOUTH
SHORE, AND ASNEL VALCIN,

                Defendants.

Civil Action No.: 1:24-cv-08821
(RPK) (LB)

 

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT**

**BOND, SCHOENECK & KING, PLLC**
Rebecca K. Kimura, Esq.
Mary Ellen Donnelly, Esq.
Sabrina Salama, Esq.
*Attorneys for Defendants*
600 Third Avenue, 22nd Floor
New York, New York 10016
 (646) 253-2300
rkimura@bsk.com
mdonnelly@bsk.com
ssalama@bsk.com

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................ 1

ALLEGATIONS IN THE COMPLAINT ......................................................................... 2

ARGUMENT ..................................................................................................................... 8

    STANDARD ON MOTION TO DISMISS ............................................................. 8

POINT I ............................................................................................................................. 9

    PLAINTIFF'S CLAIMS OF GENDER DISCRMINATION MUST BE
    DISMISSED ............................................................................................................. 9

POINT II ........................................................................................................................... 12

    PLAINTIFF'S CLAIMS OF RELIGIOUS DISCRIMINATION MUST BE
    DISMISSED ............................................................................................................. 12

POINT III .......................................................................................................................... 14

    PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS MUST BE
    DISMISSED ............................................................................................................. 14

POINT IV ......................................................................................................................... 17

    PLAINTIFF'S RETALIATION CLAIMS UNDER THE NYSHRL AND
    THE NYCHRL MUST BE DISMISSED .............................................................. 17

POINT V ........................................................................................................................... 20

    PLAINTIFF'S RETALIATION CLAIM UNDER THE NPCL MUST BE
    DISMISSED ............................................................................................................. 20

POINT VI .......................................................................................................................... 22

    PLAINTIFF'S CLAIMS UNDER THE FLSA MUST BE DISMISSED ........................... 22

POINT VII ........................................................................................................................ 23

    PLAINTIFF'S CLAIMS UNDER THE NYLL MUST BE DISMISSED ........................ 23

CONCLUSION .................................................................................................................. 26

CERTIFICATION ............................................................................................................. 27

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ardigo v. J. Christopher Capital, LLC*, 2013 U.S. Dist. LEXIS 41740, at *13
  (S.D.N.Y. Mar. 25, 2013) ................................................................................ 15

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .................................................................. 8

*Azeez v. Ramaiah*, 2015 U.S. Dist. LEXIS 46574 (S.D.N.Y. Apr. 9, 2015) ........................ 23, 24

*Barbosa v. Phx. Sutton Str. Inc.*, 2024 U.S. Dist. LEXIS 76536, *6
  (E.D.N.Y. Apr. 26, 2024) ........................................................................... 25, 26

*Bautista v. PR Gramercy Square Condo*, 642 F. Supp. 3d 411, 427 (S.D.N.Y. 2022) ............... 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ..................................................... 8

*Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) ......................... 15, 18

*Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) ...................................... 11

*Castro v. New York University*, 773 N.Y.S.2d 29 (1st Dept. 2004) .................................. 13

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ................................... 9

*Chang Yan Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, *18
  (S.D.N.Y. Mar. 7, 2023) ................................................................................ 25

*Church of the Holy Trinity v. United States*, 143 U.S. 457, 463 (1892) ............................ 24

*Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 86, 90 (2d Cir. 2013) .................................... 22

*Del Villar v. Hyatt Hotel Corp.*, 2022 U.S. Dist. LEXIS 114394, at *13
  (S.D.N.Y. June 28, 2022) ............................................................................... 16

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ................................... 9

*Dimoff v. Hudson Home Health Care, Inc.*, No. HHD-CV20-6129662-S, 2022 WL 2339707,
  at *4 (Conn. Super. Ct. June 29, 2022) ............................................................. 15

*Empls.' Ret. Sys. of Gov't of Virgin Islands v. Morgan Stanley & Co.*, 814 F.Supp.2d 344, 353
  (S.D.N.Y. 2011) ....................................................................................... 23

*Flanagan v. Girl Scouts of Suffolk Cnty., Inc.*, 2023 U.S. Dist. LEXIS 174421, *13
  (E.D.N.Y. Sept. 28, 2023), *aff'd* 2025 U.S. App. LEXIS 12747 (2d Cir. May 27, 2025) ........ 21

*Freud v. New York City Dep't of Educ.*, 2022 U.S. Dist. LEXIS 54353, at *33
  (S.D.N.Y. Mar. 25, 2022) ............................................................................... 15

*Gahfi v. N.Y.C. Dep't of Educ.*, 2025 U.S. Dist. LEXIS 37633, *17 (E.D.N.Y. Feb. 28, 2025) .. 13

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010) ............................. 16

*Gurley v. David H. Berg & Assocs.*, 2022 U.S. Dist. LEXIS 20536, *13-14 (S.D.N.Y. Feb. 2,
  2022) ................................................................................................... 14

*Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) ............................................................ 8

*Harty v. West Point Realty, Inc.*, 28 F. 4th 435, 444 (2d Cir. 2022) ................................. 26

*Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 128
  (2d Cir. 2019) .......................................................................................... 15

*Joshi v. Trustees of Columbia Univ. in the City of New York*, 2022 U.S. App. LEXIS 21963,
  *5 (2d Cir. Aug. 9, 2022) .............................................................................. 21

*Levy v. Maggiore*, 48 F.Supp.3d 428, 453 (E.D.N.Y. 2014) ............................................. 22

*Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 307-08 (2d Cir. 2021) ...................... 19

*Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) ........... 22

*Manolov v. Borough of Manhattan Cmty. College*, 952 F. Supp. 2d 522, 532
   (S.D.N.Y. Dec. 20, 2012)..................................................................................... 10
*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)... 10, 14, 17
*Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275, 286 (S.D.N.Y. 2006) ................ 16
*Ramirez v. Temin & Co.*, 2021 U.S. Dist. LEXIS 183760, *53 (S.D.N.Y. 2021) ....................... 24
*Rankine v. Levi Strauss & Co.*, 674 F.Supp.3d 57, 67 (S.D.N.Y. 2023) ..................................... 24
*Skrine v. City of New York*, 2024 U.S. Dist. LEXIS 152884, *11 (E.D.NY. Aug. 26, 2024) ...... 18
*Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013 ........................................................... 16
*United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021), *cert. denied*, 142
   S.Ct. 2679 (2022)............................................................................................................... 9
*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015)................................ 17
*Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 455 (S.D.N.Y. 2023) ....... 9, 13, 17

## Other Authorities

12 NYSCRR § 142-2.2 ...................................................................................................... 24
20 U.S.C. § 1681(a) ......................................................................................................... 10
29 U.S.C. § 207(a) ........................................................................................................... 22
42 U.S.C. § 1981 ............................................................................................................... 2
Fair Labor Standards Act ....................................................................................... 2, 24, 25
FRCP 12(b)(6) ....................................................................................................... 1, 2, 8, 9
N.Y. Exec. L. § 296(1)(a) .................................................................................................. 9
N.Y. Exec. L. § 296(1)(h) ................................................................................................ 14
N.Y. Exec. L. § 300 ......................................................................................................... 14
N.Y.C. Admin. Code 8-107(13)(b)(2)-(3) ...................................................................... 16
New York City Human Rights Law............................ 1, 9, 10, 11, 13, 14, 15, 16, 17, 18
New York Labor Law .............................................................................................. 2, 24, 25
New York State Human Rights Law ............................... 1, 9, 11, 13, 14, 15, 16, 17
NPCL § 715-b ............................................................................................................ 20, 21
NPCL § 715-b(a) .............................................................................................................. 20
NPCL § 715-b(b) ........................................................................................................ 20, 21
NPCL § 715-b(c) .............................................................................................................. 20
NYCHRL § 8-107(1)(a) .................................................................................................... 9
NYLL § 191 ..................................................................................................................... 24
NYLL § 195 ................................................................................................................ 25, 26
NYLL § 195(1) ................................................................................................................ 25
NYLL § 195(1)(a) ........................................................................................................... 25
NYLL § 195(3) .......................................................................................................... 25, 26
Title IX of the Education Amendments of 1972........................................ 1, 9, 10, 11

## PRELIMINARY STATEMENT

Defendants St. John's Episcopal Hospital (the "Hospital"), Episcopal Health Services Inc. ("EHS"), and Asnel Valcin ("Valcin") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), to dismiss with prejudice the First Amended Class and Collective Action Complaint of Plaintiff Russell Davenport ("Plaintiff"), dated May 7, 2025 (the "FAC") (ECF Doc. No. 13).

Plaintiff was a Chaplain Resident admitted into EHS's Clinical Pastoral Education and Training program ("CPE Program") for the term May 23, 2022 to May 22, 2023. Plaintiff signed a Clinical Education/Training Agreement which set forth the terms of the program and provided Plaintiff with a Stipend to cover his costs. While in the CPE Program, Plaintiff made a complaint of harassment against a fellow participant in the Program, which was unsubstantiated. Separately, a female file clerk at the Hospital made a complaint of harassment against Plaintiff, which led to Plaintiff's suspension and ultimate reinstatement with full pay. When the contract ended, Plaintiff's participation in the Program ended. Plaintiff alleges that his complaint was treated differently from the complaint made against him because of his gender, and that he was retaliated against and terminated from the Program for complaining about his treatment. He also complains that he was not permitted to wear his collar while on duty, and that he was not paid for all hours worked. Plaintiff's claims are meritless. Nevertheless, in the FAC, Plaintiff asserts causes of action for gender and religious discrimination, hostile work environment, and retaliation under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"); gender discrimination under Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681-1688 ("Title IX"); and retaliation under §715(b) of the Not-for-Profit Corporation

Law ("NPCL"). Additionally, Plaintiff asserts collective-wide wage and hour violations under the Fair Labor Standards Act ("FLSA"), and class-wide violations of the New York Labor Law ("NYLL").

Plaintiff's claims of discrimination and hostile work environment should be dismissed because Plaintiff fails to plausibly plead that he was treated less well *because of* his gender or religion, or that any of the alleged conduct rose above a petty slight or trivial inconvenience. Plaintiff's claims of retaliation likewise should be dismissed because he fails to plausibly plead any causal connection between his protected activity and alleged adverse actions. Moreover, none of the alleged retaliatory actions of Defendants are reasonably likely to deter a person from engaging in protected activity. Nor has Plaintiff properly pled a claim of retaliation under the NPCL, as EHS had a compliant whistleblower policy in place that was enforced. Plaintiff's claims under the FLSA and the NYLL should also be dismissed because he received a Stipend which compensated Plaintiff well-above the minimum wage and for any alleged overtime hours worked.

This is Plaintiff's second attempt to bring viable claims against Defendants. Despite Defendants identifying the deficiencies in the prior Complaint, Plaintiff has failed to correct any of the deficiencies with factual allegations supporting his legal claims, and instead added purely conclusory or speculative statements. Otherwise, Plaintiff has removed claims based on ethnicity and all claims under 42 U.S.C. § 1981. As the remaining claims are not viable, Plaintiff's FAC should be dismissed as to all Defendants for failure to state a claim pursuant to FRCP 12(b)(6).

## ALLEGATIONS IN THE COMPLAINT

Plaintiff alleges he is an African American male and Senior Pastor and Founder of the Arrow of Yahweh International Ministries located in Cambria Heights, Queens, NY and the Metropolitan of the Fifth Province of the Holy Communion of Churches, also known as the

International Communion of the Holy Christian Orthodox Church ("HCOC"). (FAC ¶¶48-49).

Plaintiff asserts that EHS is a 501(c)(3) not-for-profit corporation that operates a New York-based hospital system, including St. John's. (*Id.* ¶54). EHS maintains the Clinical Pastoral Education ("CPE") Center at the Hospital, which offers pastoral services to patients and community members. (*Id.* ¶56). The CPE center offers an accredited trainee program which provides professional training and education for ministry (the "CPE Program"). The Hospital offers residency and supervisor-in-training programs for individuals seeking training and certification in the field. (*Id.* ¶57). Plaintiff alleges that, similar to other hospital programs, residents in the CPE Program work as chaplains at the Hospital while taking classes and receiving training. (*Ibid.*).

Plaintiff alleges that in approximately February 2022, he was hired by Defendants and admitted to the CPE Program as a Chaplain Resident, to obtain a certification as a supervisor, which required the successful completion of 4 units of training. (*Id.* ¶59). During the duration of the CPE Program, Plaintiff was supervised by the CPE Program Director, Valcin, as well as the CPE Program Training Supervisor, Dr. Francine Hernandez ("Dr Hernandez."). (*Id.* ¶61). Plaintiff alleges that he was taking the third unit of training beginning in February 2023, applied to complete his 4th unit later in 2023, but was not accepted. (*Id.* ¶62).

Throughout his alleged employment in the CPE Program, Plaintiff asserts he received compensation at the straight time base hourly rate of $20.82. (*Id.* ¶64). Plaintiff further alleges that he regularly worked 8-10 hours per day, 5 days per week, for a total of approximately 41-45 hours per week, and that other purported class members also worked in excess of 40 hours per week. (*Id.* ¶¶65-66). Plaintiff further asserts that he and the purported class members were compensated on a bi-weekly basis and were not paid for all regular and overtime hours worked. (*Id.* ¶¶67-68).

While Plaintiff and other Chaplain Residents were scheduled to work eight-hour shifts, Plaintiff alleges that he was required, approximately 2-5 times per workweek on average, to clock out and continue working past the scheduled end of his shift, sometimes for an hour or more, without compensation. (*Id*. ¶¶69-70). Plaintiff alleges that other Chaplain Residents and Supervisors-in-Training were required to remain at work beyond the end of their respective shifts off-the-clock without compensation. (*Id.* ¶72). Plaintiff alleges that he and other Chaplain Residents and Supervisors-In-Training complained to Valcin that they were not being paid for time at the end of scheduled shifts, but Valcin refused to change the policy. (*Id.* ¶73). Plaintiff also alleges that on those occasions when Plaintiff and other Chaplain Residents and Supervisors-In-Training clocked out after the scheduled shift end, Defendants would manually manipulate their time records to reflect a clock out at the scheduled shift conclusion. (*Id.* ¶74).

Throughout the Residency Program, Plaintiff was subject to a daily thirty-minute deduction from his compensation for a lunch break. (*Id*. ¶76). However, Plaintiff alleges he was never permitted to have a free and clear break for lunch because he remained on call throughout the day and was frequently directed by Defendants to perform pastoral duties and other work tasks during this lunch break. *Id.* Similarly, Plaintiff alleges that other Chaplain Residents and Supervisors-In-Training were also subject to daily thirty-minute deductions for a lunch break, but were required to work during that time. (*Id.* ¶77). Due to the aforementioned policy of deducting thirty minutes from Plaintiff's hours even though Plaintiff was required to work all day, Plaintiff, FLSA Collective Plaintiffs, and Class Members were deprived of regular and overtime wages. (*Id.* ¶78).

Plaintiff asserts that throughout his alleged employment, he and other Chaplain Residents and Supervisors-In-Training were subject to a daily 30-minute deduction from pay for a lunch break, but were never permitted to have a free and clear break for lunch, as they remained on call

throughout the day and were directed to perform pastoral duties during their lunch break. (*Id.* ¶¶76-77). Plaintiff further alleges that his daily duties, which included traveling to meet patients, families, and staff members to provide them spiritual and clinical counseling, praying with them, conducting worship services, and performing religious rites and rituals, constituted "manual labor" which he was required to perform 50% of each workday. (*Id.* ¶79). Plaintiff alleges that other putative class members similarly performed these duties 25% of each workday. (*Id.* ¶80). Plaintiff alleges that neither he nor the putative class members received a compliant wage-and-hour notice or proper wage statements. (*Id.* at ¶¶83-84).

Plaintiff alleges that other Chaplain Residents and Supervisors-In-Training were permitted to wear clothing while on duty in accordance with their respective religious traditions. (*Id.* ¶86). For example, Plaintiff alleges he observed a female Muslim chaplain wearing a hijab and a Jewish chaplain wearing a kippah. (*Id.* ¶87). Plaintiff also noticed a Roman Catholic colleague, Father Morado, wearing a yoke, and trainees from the Roman Catholic Church similarly wearing their yokes. (*Id.* ¶88). Plaintiff alleges that beginning in February 2023, Plaintiff began wearing a yoke, while on duty, and when Valcin observe this, he told Plaintiff "You can't wear that around here!" (*Id.* ¶89-90). In response, Plaintiff alleges he made a complaint to Valcin, explaining that wearing his yoke when providing spiritual counsel was based on his religious traditions and was particularly important given his status as an Archbishop in the HCOC, and that chaplains of different religions should be treated equally such as the Roman Catholic chaplain. (*Id.* ¶¶91-92). Valcin nevertheless ordered Plaintiff to stop wearing the yoke, explaining it would cause confusion. (*Id.* ¶93). Valcin admonished Plaintiff not to wear his yoke 7-8 more times. (*Id.* ¶ 94).

During the term starting in Fall 2022, Plaintiff was assigned to share a small office at the Hospital with a female Chaplain Resident, Chaplain Obiyo ("Obiyo"). (*Id.* ¶104). Plaintiff alleges

that on August 23, 2022, Obiyo gave Plaintiff a sketch of a cat, and asked Plaintiff, "What do you prefer? Pussy or Doggy?" (*Id.* ¶¶105-106). Plaintiff further alleges that on August 31, 2022, Obiyo sent Plaintiff a video depicting cats and dogs in sexual poses and performing sexual acts. (*Id.* ¶ 108). Plaintiff asserts that he complained to Obiyo to cease the alleged harassment. (*Id.* ¶111). Plaintiff also alleges that Obiyo moved her chair close to Plaintiff and bumped her chair into Plaintiff's chair, touched and brushed up against Plaintiff, rubbed Plaintiff's shoulders and legs, and made "sexualized and inappropriate comments" to Plaintiff. (*Id.* ¶¶112-114).

On December 26, 2022, Plaintiff filed a formal sexual harassment complaint against Obiyo with EHS. (*Id.* ¶116). Plaintiff alleges that while Obiyo was neither suspended nor prohibited from entering the office, on December 29, 2022, Plaintiff complained to Valcin that Plaintiff was coming into the office. (*Id.* ¶¶118-119). On February 7, 2023, Plaintiff received correspondence from HR, stating, *inter alia*, that it had concluded its investigation of Plaintiff's December 26, 2022 complaint and was unable to substantiate the complaint. (*Id.* ¶121). Plaintiff alleges that upon further questioning, the HR investigator explained to Plaintiff the context of the artwork and video she had given to Plaintiff. (*Id.* ¶¶124-125). Following receipt of the February 7, 2023 letter, Plaintiff alleges he made a complaint to HR at EHS that he believed the investigation into his complaint of harassment was inadequate and contrary to procedure. (*Id.* ¶129).

Plaintiff alleges that after he made the February 7, 2023 complaint, Defendants began taking retaliatory actions. (*Id.* ¶132). For example, Plaintiff alleges that in early February 2023, Valcin singled Plaintiff out for wearing his yoke. (*Id.* ¶¶133-134). Plaintiff also alleges that prior to his December 26, 2022 complaint, Valcin promised to appoint Plaintiff as liaison to police officers in the Hospital. (*Id.* ¶136). However, after the December 2022 complaint, Valcin delayed the appointment. (*Id.* ¶137). Later in February 2023, Plaintiff again asked Valcin about his progress

on the police liaison appointment, and Valcin allegedly responded, "We'll see about that." (*Id.* ¶138). Plaintiff was never appointed to the liaison role. (*Id.* ¶139). Plaintiff also alleges that in late February or early March 2023, Valcin said to Plaintiff, "Chaplain Davenport—Would it hurt to smile? You're a Chaplain." (*Id.* ¶141).

On March 23, 2023, a file clerk at the Hospital, Stephanie, filed a complaint against Plaintiff. (*Id.* ¶144). Plaintiff alleges that he asked a different file clerk to provide him with a census, but Stephanie told the other clerk not to comply with Plaintiff's request, as she had previously objected to Plaintiff's requests to perform routine tasks. (*Id.* ¶146). Plaintiff alleges he went to Stephanie's supervisor about the problem, and shortly thereafter, Valcin informed Plaintiff in front of the other chaplains that Stephanie had made a complaint of harassment against Plaintiff, and asked Plaintiff to "explain your actions." (*Id.* ¶¶147-148). Later that day, Valcin notified Plaintiff that he was suspended. (*Id.* ¶150).

On or about March 24, 2023, Plaintiff submitted a written complaint to Ms. Whelan at HR, copying an attorney, that his suspension was discriminatory and retaliatory. (*Id.* ¶152). This letter read as follows:

> *Due to the way that I have been handled, I feel that this is a retaliatory action on the behalf of St. John's hospital because I in turn filed an SH case against another staff member. When I filed Sexual Harassment against a former employee, she was moved to "work" in another location in the same building and around the corner from me. So much so that she was able to walk back into my office even after I had notified my supervisors that I felt uncomfortable with her in the building. She remained employed for approximately a week. In contrast, I was suspended "the next day". No written information, no nothing. I feel that this action was of a retaliatory nature as well as the process. I feel that I was not allotted a chance to defend myself, nor was I given any form of due process concerning this issue. It is my intent to litigate, and I am forwarding this information to my attorney.*

(*Id.* ¶153).

Plaintiff remained suspended until the investigation was completed on or about April 28,

2023. (*Id.* ¶154). Plaintiff alleges he was summoned to a meeting that same day to discuss the investigation, which was attended by EHS's Chief People Officer, Ms. Gordon, and Valcin. (*Id.* ¶¶155-157). Plaintiff asserts that during the meeting, Ms. Gordon stated that Stephanie's complaint had proven to be unmeritorious, and that Plaintiff was being reinstated. (*Id.* ¶158). Ms. Gordon also stated that Plaintiff would be written up and required to undergo harassment training based on a statement he made to Stephanie prior to the complained-of incident in 2022, that Stephanie's hostility to him was because she "likes me." (*Id.* ¶¶159-160). Plaintiff also alleges that, during the April 28, 2023 meeting, Valcin advised Plaintiff that his residency contract would not be renewed. (*Id.* ¶164). When Plaintiff complained to Dr. Hernandez in early May 2023 about the nonrenewal, Dr. Hernandez explained that the program was full for the following semester. (*Id.* ¶ 166). Plaintiff alleges his participation in the CPE Program ended on May 18, 2023. (*Id.* ¶172).

## ARGUMENT

## STANDARD ON MOTION TO DISMISS

To survive a motion to dismiss under Rule FRCP 12(b)(6), a complaint must contain sufficient factual matter which, accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be plausible on its face, the factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief.

*Twombly*, 550 U.S. at 555.

On a motion to dismiss under FRCP Rule 12(b)(6), courts may consider documents attached to the complaint or incorporated by reference. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Even if not incorporated by reference, a document may be considered on a motion to dismiss if the complaint "relies heavily upon its terms and effect" which makes the document "integral" to the complaint. *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021), *cert. denied*, 142 S.Ct. 2679 (2022) (*quoting DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

## POINT I

### PLAINTIFF'S CLAIMS OF GENDER DISCRMINATION MUST BE DISMISSED

In Plaintiff's First and Second Causes of Action, he asserts he was discriminated against based on his gender under the NYSHRL, the NYCHRL and Title IX. Plaintiff fails to state a claim under any of these statutes.

Under the NYSHRL, it is "an unlawful discriminatory practice" for an employer, based on, *inter alia*, an individual's sex, "to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. L. § 296(1)(a). To state a claim of discrimination, Plaintiff must plausibly plead that he suffered an adverse employment action and that it occurred under circumstances giving rise to an inference of discrimination. *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 455 (S.D.N.Y. 2023).

Section 8-107(1)(a) of the NYCHRL of the makes it "an unlawful discriminatory practice . . . for an employer or an employee or agent thereof, because of the . . . gender . . . of any person, to refuse to hire or employ or to bar or discharge from employment such person in compensation or in terms, conditions or privileges of employment." To state a gender discrimination claim under

the NYCHRL, Plaintiff need only demonstrate that he has been treated less well than other employees because of his gender. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). However, the NYCHRL is not a general civility code; a plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive. *Ibid.*

Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In order to state a *prima facie* case of discrimination under Title IX, a plaintiff must show that: (i) he was excluded from participation in, or denied the benefits of, or subjected to discrimination in, an educational program; (ii) that the program received federal assistance; and (iii) that the exclusion was on the basis of sex. *Manolov v. Borough of Manhattan Cmty. College*, 952 F. Supp. 2d 522, 532 (S.D.N.Y. Dec. 20, 2012).

Plaintiff has not plausibly pled that he was treated less well than other employees because of his gender. Plaintiff's gender discrimination claim is based on his belief that the harassment complaint he made against a female chaplain, Obiyo, was treated differently than the harassment complaint lodged against him by a female clerk at the Hospital, Stephanie. However, Plaintiff's allegations show that Defendants complied with the sexual harassment policy with respect to both complaints, in that Plaintiff acknowledges that Defendants conducted an immediate review of the allegations, took interim actions as appropriate, notified the individuals involved, and took corrective actions as warranted. (FAC ¶101). Specifically, Plaintiff admits that in connection with his complaint, he provided HR with a full explanation of what occurred and supplied HR with video and image, and that HR conducted an investigation and provided him with the results that it was unable to substantiate the complaint. (*Id.* ¶¶116, 121). Although Plaintiff asserts that

Defendants took no action against Obiyo, it is inconsistent with other allegations that Obiyo was moved out of Plaintiff's office to another location and a week later she was no longer at the Hospital. (*Id.* ¶153). Similarly with regard to Stephanie's complaint, HR conducted an investigation and provided Plaintiff with the results that while the current allegations were unsubstantiated, Plaintiff made inappropriate comments on a prior occasion, for which Plaintiff was required to undergo harassment training. (*Id.* ¶¶153-160). Plaintiff disputes that both complaints were handled in the same manner solely because he was subjected to an interim measure of suspension as a result of the complaint against him. However, in keeping with the sexual harassment policy, HR conducted an investigation into the complaint against Plaintiff and determined that interim measures were appropriate in that case, i.e., Plaintiff was suspended pending the investigation. Plaintiff admits that at the conclusion of the investigation, he was reinstated, received his full pay, and ultimately completed his term under the Residency Agreement. (*Id.* ¶¶ 158, 82, 172). Moreover, Plaintiff's allegations show that Obiyo was likewise subjected to interim measures. (*Id.* ¶¶153). Even if the same interim measure was not imposed in response to Plaintiff's complaint, the two complaints were not identical. With respect to Plaintiff's complaint, HR determined that the appropriate interim measure was to move Obiyo to a different office. Thus, while the two different complaints did not result in the same outcomes, both were handled in accordance with EHS's sexual harassment policy. Otherwise, Plaintiff only speculates that he was treated differently from the female complainant. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) (finding that a plaintiff's "[feelings and perceptions] of being discriminated against [are] not evidence of discrimination" (citation omitted)). Plaintiff therefore has not pled a plausible claim of discrimination based on gender under the NYSHRL, NYCHRL or Title IX.

Nor has Plaintiff plausibly alleged that he was excluded from participation in or denied the benefits of the Residency Program due to his gender under Title IX. While Plaintiff alleges that he was terminated from the CPE Program, Plaintiff concedes that he had a residency contract which was not renewed. (FAC ¶¶164-166). The contract specifically states that his participation in the Program was for twelve months, from May 23, 2022 to May 22, 2023. (*See* Affidavit of Asnel Valcin ("Valcin Aff."), Exhibit "A").[1] Thus, Plaintiff cannot plausibly plead that he was terminated from the CPE Program – his contract simply ended in May 2023, and Plaintiff admits that he participated in the Program until May 18, 2023. (FAC ¶172). Moreover, Plaintiff cannot plausibly plead that he was denied renewal into the Program because of his gender, as he admits that another male Chaplain, Kevin, was admitted but withdrew from the Program. (*Id.* ¶¶166-167). Plaintiff was unable to complete a fourth unit course, and thus to obtain a supervisory certification, because he was told the Program was full for the following semester. (*Id.* ¶166-168). Although Plaintiff alleges that another chaplain withdrew from the Program, thereby creating a spot, Plaintiff does not allege *when* that chaplain withdrew or whether there were others waiting ahead of Plaintiff who would have filled the spot. Regardless, nothing prevented Plaintiff from reapplying for the subsequent semester to obtain credit for a fourth unit and his supervisory certification. Plaintiff does not allege that he actually submitted an application for admission for a fourth unit in the CPE Program and was denied acceptance of same. Accordingly, Plaintiff's claims of discrimination should be dismissed.

## POINT II

## PLAINTIFF'S CLAIMS OF RELIGIOUS DISCRIMINATION MUST BE DISMISSED

In his First Cause of Action, Plaintiff also asserts he was discriminated against based on

---

[1] Plaintiff's Clinical Pastoral Education/Training Agreement (hereinafter, the "Residency Agreement") is incorporated by reference in the Complaint. *Chambers*, 282 F.3d at 153.

his religion under the NYSHRL and the NYCHRL. As set forth above, to state a claim of discrimination under the NYSHRL, Plaintiff must plausibly plead that he suffered an adverse employment action and that it occurred under circumstances giving right to an inference of discrimination. *Wheeler*, 694 F. Supp. 3d at 455. To survive a motion to dismiss a religious discrimination claim under the NYCHRL, a plaintiff must plead that he was treated less well for a discriminatory reason. *Gahfi v. N.Y.C. Dep't of Educ.*, 2025 U.S. Dist. LEXIS 37633, *17 (E.D.N.Y. Feb. 28, 2025). Plaintiff failed to plausibly meet his burden under either statute, and his claims must be dismissed.

Plaintiff alleges that he is part of the Holy Christian Orthodox Church (HCOC), an "ecumenical Orthodox Catholic Communion of Churches," and that his religious doctrine and customs dictate that he wear a yoke, or a pastoral collar. (FAC ¶¶49-50, 85). Plaintiff does not allege that he was never permitted him to wear a yoke -- only when he was on duty, as it may cause confusion among patients. (*Id.* ¶¶90, 93). In fact, Plaintiff does not allege that any other chaplain resident in the CPE Program was permitted to wear a yoke while on duty. Plaintiff only alleges that a "colleague," Father Morado, and unidentified "trainees from the Roman Catholic Church" were able to wear their yokes. (*Id.* ¶88). Plaintiff does not allege that these individuals were Chaplain Residents or participants in the CPE Program, and therefore are not similarly situated. *See Castro v. New York University*, 773 N.Y.S.2d 29 (1st Dept. 2004) (holding that for purposes of employment discrimination claim, plaintiff was not "similarly situated" to another employee, who was not assigned the same duties or responsibilities as plaintiff). As a result, Plaintiff cannot plausibly plead that he was treated less well than others in his position.

Moreover, Plaintiff's allegations do not demonstrate that he was treated less well *because of* his religion. Rather, Valcin explained that he should not wear his yoke while on duty because it

would confuse the patients, presumably as they may fear that a pastor is visiting them to administer last rites. The Hospital is entitled to make such policies in providing the best care for its patients. While Plaintiff alleges that a female Muslim chaplain was permitted to wear a hijab, and a Jewish chaplain was permitted to wear a kippah, they would not create similar confusion for patients, as they are worn by non-clergy members as well. Accordingly, Plaintiff's religious discrimination claims under the NYSHRL and NYCHRL should be dismissed.

## POINT III

## PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS MUST BE DISMISSED

In his First Cause of Action, Plaintiff also asserts that he was subjected to a hostile work environment based on his gender and religion in violation of the NYSHRL and the NYCHRL. To state a claim of hostile work environment under the NYSHRL, a plaintiff must plausibly allege that he was subjected to "inferior terms, conditions or privileges of employment because of the individual's membership in one or more . . . protected categories." N.Y. Exec. L. §§ 296(1)(h) & 300. A plaintiff need not plead that his hostile working environment was both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive, or a sufficient combination of these elements, to have altered his working conditions. *Gurley v. David H. Berg & Assocs.*, 2022 U.S. Dist. LEXIS 20536, *13-14 (S.D.N.Y. Feb. 2, 2022). To state a hostile work environment claim under NYCHRL, a plaintiff does not need to allege either materially adverse employment actions or severe and pervasive conduct. *Bautista v. PR Gramercy Square Condo*, 642 F. Supp. 3d 411, 427 (S.D.N.Y. 2022). Rather, a plaintiff must show only "unequal treatment based upon membership in a protected class." *Ibid.* In evaluating a hostile work environment claim the court must look at the "totality of the circumstances." *Mihalik*, 715 F.3d at 111. However, "petty, slight, or trivial inconveniences are not actionable." *Bermudez v. City of New York*, 783 F.

Supp. 2d 560, 579 (S.D.N.Y. 2011).

Plaintiff only alleges three incidences in support of his claim, none of which rise above a petty slight or trivial inconvenience. First, Plaintiff alleges that Valcin "repeatedly and publicly humiliated" him and "singled him out for public humiliation and mockery" for wearing his yoke. (FAC ¶133). Such conclusory allegations are devoid of any specific details regarding what was said or how it was humiliating. Indeed, the only words that Plaintiff alleges Valcin said with regard to the yoke was, "You can't wear that around here" because it would cause "confusion." (*Id.* ¶¶ 90, 93). Plaintiff also does not allege that he was unable to perform his job duties without his yoke or as a result of these comments. Even if Plaintiff was repeatedly told not to wear the yoke while on duty, it would not rise to the level of a constitute a hostile work environment. These "run-of-the-mill workplace conflicts" that only reflect an employee's "fraught" relationship with his supervisor do not meet the required threshold. *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 128 (2d Cir. 2019); *Dimoff v. Hudson Home Health Care, Inc.*, No. HHD-CV20-6129662-S, 2022 WL 2339707, at *4 (Conn. Super. Ct. June 29, 2022).

Second, Plaintiff alleges that Valcin told him, "Would it hurt to smile? You're a chaplain," when unbeknownst to Valcin, Plaintiff had just lost a family member. (*Id.* ¶¶ 141-142). Such comment, even if intentional, does not constitute actionable harassment above a petty slight or trivial inconvenience. *See Freud v. New York City Dep't of Educ.*, 2022 U.S. Dist. LEXIS 54353, at *33 (S.D.N.Y. Mar. 25, 2022) ( holding that "four—insensitive—isolated comments do not raise an inference of the requisite pervasive discrimination sufficient to change the conditions of Plaintiff's employment and entertain a hostile work environment claim" under the NYSHRL and NYCHRL); *Ardigo v. J. Christopher Capital, LLC*, 2013 U.S. Dist. LEXIS 41740, at *13 (S.D.N.Y. Mar. 25, 2013) (holding that the "three mildly offensive statements" are not sufficient

to state a plausible hostile work environment under the NYCHRL).

Third, Plaintiff alleges that he was subjected to a hostile work environment by another participant in the CPE Program, Obiyo – not Valcin or a supervisor. It is well-established that a plaintiff must show a basis for imputing objectionable conduct to the employer in order to hold the employer liable under the NYSHRL or the NYCHRL. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010). Under the NYSHRL, where the plaintiff alleges misconduct by a co-worker rather than a supervisor, the employer is liable "only if it was negligent in controlling working conditions." *Del Villar v. Hyatt Hotel Corp.*, 2022 U.S. Dist. LEXIS 114394, at *13 (S.D.N.Y. June 28, 2022). In particular, "the plaintiff must demonstrate that the employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Id.* (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013). Under the NYCHRL, an employer is only liable for the conduct of a non-supervisory employee creating a hostile work environment only where the employer "knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action," or "should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct." N.Y.C. Admin. Code 8-107(13)(b)(2)-(3); *Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275, 286 (S.D.N.Y. 2006) (dismissing plaintiff's hostile work environment claim where plaintiff failed to allege that "her supervisors made the discriminatory comments, were or should have been aware of them, or failed to take remedial action").

Defendants cannot be held liable here for the coworker's conduct because Plaintiff did not notify EHS or Valcin of the alleged harassment until December 26, 2022 and December 29, 2022,

respectively. (FAC ¶¶116, 119). In response, Plaintiff acknowledges that Obiyo's office was moved, and within a week of his original complaint, she was no longer a participant in the Program. (*Id.* ¶ 153). Accordingly, Plaintiff's complaint was addressed and the complained-of contact was stopped. Moreover, EHS fully investigated Plaintiff's allegations of harassment and determined that they were unfounded. As Plaintiff cannot plausibly plead a hostile work environment claim against Defendants, the claims should be dismissed.

**POINT IV**

**PLAINTIFF'S RETALIATION CLAIMS UNDER THE NYSHRL AND THE NYCHRL MUST BE DISMISSED**

In his First Cause of Action, Plaintiff asserts that he was retaliated against in violation of the NYSHRL and the NYCHRL. To state a *prima facie* claim of retaliation, a plaintiff must allege that: (1) he participated in an activity protected by the NYSHRL; (2) his participation was known to his employer; (3) his employer thereafter subjected him to materially adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 462 (S.D.N.Y. 2023). An adverse employment action is one that causes a "materially adverse change in the terms and conditions of employment." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). It must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Ibid.* To state a claim of retaliation under the NYCHRL, plaintiff must show that he took an action opposing the employer's discrimination, and as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action. *Mihalik*, 715 F.3d at 112. While retaliation claims under the NYCHRL are reviewed more liberally than NYSHRL claims, the NYCHRL still requires plaintiffs to plead both a protected activity and a causal connection in order to state a retaliation claim. *Skrine v. City of New York*, 2024 U.S. Dist.

LEXIS 152884, *11 (E.D.N.Y. Aug. 26, 2024). Plaintiff does not meet the pleading standard for retaliation under the NYSHRL or the NYCHRL.

Plaintiff alleges that he engaged in protected activity by making complaints on December 26, 2022, December 29, 2022, and February 7, 2023. (FAC ¶¶116, 119, 129-130). Plaintiff further alleges that in response to his complaints, Defendants retaliated against him as follows: (1) in February 2023, Valcin singled Plaintiff out and publicly humiliated him for wearing his yoke approximately 7-8 times (*Id.* ¶133); (2) Valcin had allegedly promised to appoint Plaintiff as liaison to police officers in the Hospital, but after the December 2022 complaints he delayed the appointment, and shortly after the February 2023 complaint he told Plaintiff, "We'll see about that," but was never appointed. (*Id.* ¶136-139); (3) in late February or early March 2023, Valcin told Plaintiff, "Chaplin Davenport – Would it hurt to smile? You're a Chaplain," during a time in which he had recently lost an immediate family member (*Id.* ¶¶141-142); (4) on March 23, 2023, a file clerk at the Hospital made a harassment complaint against Plaintiff then asked Plaintiff to explain his action in a meeting with other chaplains (*Id.* ¶ 144-149); (5) Plaintiff was told at the April 28, 2023 meeting that his Residency Agreement would not be renewed (*Id.* ¶164-165); and (6) Plaintiff was terminated from the CPE Program on May 18, 2023. (*Id.* ¶172).

None of the alleged retaliatory actions would reasonably deter a person from making a complaint. As for Plaintiff's allegations that Valcin singled him out for public humiliation and mockery for wearing his yoke, and requesting that Plaintiff smile, they do not support a claim for retaliation, as an "insulting statement alone is not a retaliatory act, because it did not affect the terms and conditions of employment and, while insulting, would not deter a reasonable person from engaging in protected activity." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 592 (S.D.N.Y. 2011) (dismissing cause of action for retaliation under the NYCHRL). Similarly,

Plaintiff's non-appointment as a police liaison would also not reasonably deter a person from engaging in a protected activity, as the appointment was not part of Plaintiff's CPE Program or inherent to his responsibilities as a Chaplain Resident. With regard to Plaintiff's alleged non-renewal of his Residency Agreement for a fourth unit, the CPE Program was for a specific term and Plaintiff had no entitlement to renewal of the agreement. (*See* Valcin Aff., Exhibit "A"). As for the complaint made against Plaintiff by a file clerk, it does not constitute action by Defendants. In fact, these alleged retaliatory acts did not deter Plaintiff, who continued to make complaints to Defendants on March 24, 2023 and April 28, 2023 – <u>after</u> the alleged incidents of retaliation occurred. (FAC ¶¶152, 161-162).

Plaintiff also failed to allege any causal connection between his protected activity and the alleged adverse actions, other than conclusory statements and pure speculation. For example, Plaintiff only states in a conclusory manner that he was retaliated against by not being appointed as liaison to police officers, and that Valcin told him to smile despite having suffered the loss of a family member. This is insufficient to show causal connection under any standard. *See, Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 307-08 (2d Cir. 2021) (dismissing plaintiff's retaliation claim where the plaintiff only alleged in a conclusory fashion that "as a result of reporting Al-Mubaraki's misconduct WAFRA seized the opportunity to terminate [plaintiff] based on the basis of a false accusation of sex discrimination and harassment"). As for the alleged public humiliation of Plaintiff wearing a yoke, Plaintiff only identifies Valcin telling him "You can't wear that around here!" and Valcin explained that it would cause confusion among the patients. (FAC ¶¶90, 93). With regard to Plaintiff's non-renewal in the CPE Program, Plaintiff was told that the Program was full for the following semester, and he was not terminated but rather his participation in the Program ended according to the terms of the Residency Agreement. (*Id.* ¶166). Finally, the

harassment claim was made by a file clerk for the Hospital, not by any of the Defendants, thus cannot be retaliatory in response to complaints made to EHS. Accordingly, Plaintiff has not sufficiently pled a claim of retaliation against Defendants, and his claims should be dismissed.

## POINT V

## PLAINTIFF'S RETALIATION CLAIM UNDER THE NPCL MUST BE DISMISSED

In his Third Cause of Action, Plaintiff asserts that he was retaliated against in violation of NPCL § 715-b. Section NPCL § 715-b(a) of the NPCL provides, *inter alia*, that certain not-for-profit corporations "shall adopt, and oversee the implementation of, and compliance with, a whistleblower policy to protect from retaliation persons who report suspected improper conduct." A whistleblower policy must include (1) "procedures for the reporting of violations or suspected violations of law or corporate polices"; (2) "[a] requirement that an employee, officer or director of the corporation be designated to administer the whistleblower policy and to report to the board or an authorized committee thereof"; (3) "[a] requirement that the person who is the subject of a whistleblower complaint not be present at or participate in board or committee deliberations or vote on the matter relating to such complaint"; and (4) "[a] requirement that a copy of the policy be distributed to all directors, officers, key persons, employees and to volunteers who provide substantial services to the corporation." *See* NPCL § 715-b(b). Section 715-b(c) of the NPCL further provides that "[a] corporation that has adopted and possesses <u>a whistleblower policy</u> . . . <u>that is substantially consistent with the provisions of paragraph (b)</u> of this section <u>shall be deemed in compliance with the provisions of this section</u>." (emphasis added).

As an initial matter, Plaintiff's claim fails as a matter of law because he does not identify which provision of NPCL § 715-b was violated, or which portion of EHS and the Hospital's whistleblower policy was not complied with or implemented. Rather, Plaintiff's claim appears to

be premised on EHS's *sexual harassment* policy, and *not* its whistleblower policy. (FAC ¶¶ 98-102). Even then, Plaintiff only makes conclusory allegations that he made certain complaints to EHS and the Hospital, and EHS and the Hospital did not comply with their sexual harassment policy. (*Id.* ¶¶ 206-208).

Notwithstanding, Plaintiff cannot plausibly plead a violation of NPCL §715-b, as EHS's whistleblower policy (the "Whistleblower Policy") substantially meets all of the requirements under NPCL §715-b(b). (*See* Valcin Aff., Exhibit "B")[2]. A claim under NPCL § 715-b fails where there is a whistleblower policy in place, and the policy was adhered to, even if the plaintiff is ultimately dissatisfied with the outcome of the investigation. *Flanagan v. Girl Scouts of Suffolk Cnty., Inc.*, 2023 U.S. Dist. LEXIS 174421, *13 (E.D.N.Y. Sept. 28, 2023), *aff'd* 2025 U.S. App. LEXIS 12747 (2d Cir. May 27, 2025); *Joshi v. Trustees of Columbia Univ. in the City of New York*, 2022 U.S. App. LEXIS 21963, *5 (2d Cir. Aug. 9, 2022) ("Columbia has shown that it conducted a thorough investigation of Joshi's allegations of misconduct, offered to protect him against retaliation, and then investigated his claims that he was the subject of retaliation.").

Moreover, Plaintiff does not make any factual assertions suggesting that Defendants failed to comply with the Whistleblower Policy. Plaintiff only asserts that he made a complaint regarding Chaplain Obiyo's behavior towards him, HR investigated the complaint, and moved Chaplain Obiyo's office, where she remained in the Program for approximately a week after Plaintiff reported the incident. (FAC ¶¶144, 150, 154). As discussed in detail in the preceding section, there are no plausible allegations of retaliatory acts taken against Plaintiff as a result of the complaints he made to Defendants. Because Plaintiff's factual allegations demonstrate that Defendants had a whistleblower policy in place and that the policy was adhered to, Plaintiff's claim under the NPCL

---

[2] The Whistleblower Policy is incorporated by reference in the Complaint. *Chambers*, 282 F.3d at 153.

should be dismissed.

**POINT VI**

**PLAINTIFF'S CLAIMS UNDER THE FLSA MUST BE DISMISSED**

In the Fourth Cause of Action, Plaintiff asserts that he and other Chaplain Residents and Supervisors-In-Training ("Collective Members") are entitled to unpaid overtime wages and liquidated damages under the FLSA. The FLSA mandates that employees be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week. 29 U.S.C. § 207(a). "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). Specifically, a plaintiff must allege overtime without compensation in a "given" workweek, rather than "an all-purpose pleading template alleging overtime in 'some or all workweeks'" in order to plead a plausible overtime claim. *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 86, 90 (2d Cir. 2013) (*quoting Lundy*, 711 F.3d at 114).

Plaintiff contends that he was compensated at a straight time base hourly rate of $20.82 (FAC ¶64), he regularly worked a total of approximately 41-45 hours per week (*Id.* ¶65) and he was not paid for all regular and overtime hours (*Id.* ¶68). Plaintiff's allegations are contradicted by the terms of the Residency Agreement, which establishes that Plaintiff received a stipend in the amount of $40,614.94 (the "Stipend") for the 52-week period of the Program, rather than an "hourly wage." (Valcin Aff., Exhibit "A"). On a motion to dismiss, courts need not accept as true allegations that are contradicted by documents on which the complaint relies or are incorporated by reference. *Levy v. Maggiore*, 48 F.Supp.3d 428, 453 (E.D.N.Y. 2014). Thus, these allegations are insufficient to defeat a motion to dismiss. *Empls.' Ret. Sys. of Gov't of Virgin Islands v. Morgan*

22

*Stanley & Co.*, 814 F.Supp.2d 344, 353 (S.D.N.Y. 2011).

Instead, in light of the Stipend, in order for Defendants to be in compliance with the FLSA's minimum wage and overtime wage requirements, Plaintiff would have to be paid at least $290.00 per week. Even assuming 5 hours of overtime per week, as alleged by Plaintiff, he would have to be paid at least $344.40, as follows:

| | |
|---|---|
| Federal minimum wage: $7.25 | $7.25 x 40 hours = $290.00 |
| Federal overtime wage: $10.88 | $10.88 x 5 hours =  $54.40 |
| | Total = $344.40 |

Plaintiff was compensated at $781.06 per week ($40,614.94 ÷ 52). Accordingly, Plaintiff fails to state a plausible claim under FLSA for unpaid overtime wages. *See Azeez v. Ramaiah*, 2015 U.S. Dist. LEXIS 46574 (S.D.N.Y. Apr. 9, 2015) (the court calculating that a $600 per week stipend would have properly fulfilled plaintiff's minimum wage and overtime compensation obligations under both federal and state law).

## POINT VII

## PLAINTIFF'S CLAIMS UNDER THE NYLL MUST BE DISMISSED

In the Fifth Cause of Action, Plaintiff asserts that he and other Chaplain Residents and Supervisors-In-Training ("Class Members") are entitled to unpaid wages, liquidated damages, and statutory penalties under the NYLL. More specifically, Plaintiff contends that he was compensated at a straight time base hourly rate of $20.82 (FAC ¶64), he regularly worked a total of approximately 41-45 hours per week (*Id.* ¶65), he was not paid for all regular and overtime hours (*Id.* ¶68), he was required to clock out and continue working approximately 2-5 times per week, sometimes for an hour or more (*Id.* ¶70), he was subject to a daily 30 minute deduction from his wages for lunch break which he was never permitted to take free and clear of all tasks (*Id.* ¶76), he performed "manual labor" 50% of each workday by traveling, providing clinical counseling,

praying, conducting worship and religious rites (*Id.* ¶80), and he was paid bi-weekly (*Id.* ¶67).

With regard to overtime, the NYLL adopts an identical standard as the FLSA, as set forth in the preceding section. *See* 12 NYSCRR § 142-2.2 (incorporating the FLSA definition of overtime into the NYLL). Accordingly, the pleading standard for overtime claims under the NYLL is analytically identical to the FLSA. *Ramirez v. Temin & Co.*, 2021 U.S. Dist. LEXIS 183760, *53 (S.D.N.Y. 2021). Thus, for the same reasons discussed above, Plaintiff's claims that he was not paid overtime should also be dismissed under the NYLL. *Azeez*, 2015 U.S. Dist. LEXIS 46574.

Plaintiff's claim under NYLL § 191, that he is considered a "manual worker", and as such, he should have been compensated weekly, instead of biweekly, should also be dismissed. NYLL § 191 defines a "manual worker" as "a mechanic, workingman or laborer." The Department of Labor interprets this provision to include employees who spend more than 25% of their working time performing physical labor. By this criterion, carpentry workers, cooks, waitstaff, grocery store employees, janitorial staff, hotel maids, airport chauffeurs, and pizzeria workers have been found to be manual workers. *Rankine v. Levi Strauss & Co.*, 674 F.Supp.3d 57, 67 (S.D.N.Y. 2023). Plaintiff's own description of his daily activities do not plausibly support his contention that he is a manual laborer. Although Plaintiff alleges that some of his duties required "physical contact," he does not allege that his duties required "physical *labor*." While Defendants are unaware of any specific legal authority addressing this category of employee for purposes of NYLL § 191, the U.S. Supreme Court in *Church of the Holy Trinity v. United States*, 143 U.S. 457, 463 (1892) stated, "*The common understanding of the terms labor and laborers does not include preaching and preachers*; and it is to be assumed that words and phrases are used in their ordinary meaning." (emphasis added). Using the foregoing authority as a guide, Plaintiff has not plausibly alleged that he is a manual worker under NYLL § 191.

Plaintiff's contention that Defendants violated NYLL § 195(1), by failing to provide wage notices, should also be dismissed. NYLL § 195(1)(a) requires, among other things, that an employer provide an employee, at the time of hiring, with a notice describing the employee's rate of pay for regular and overtime hours. The Residency Agreement, signed by Plaintiff on April 28, 2022, *prior* to commencement of his term, provided the information required pursuant to NYLL § 195(1)(a). (*See* Valcin Aff., Exhibit "A"). Thus, Plaintiff cannot plead a plausible claim for relief under NYLL § 195(1).

Similarly, Plaintiff's contention that Defendants violated NYLL § 195(3), by failing to provide wage statements, should be dismissed. Notwithstanding the fact that documentary evidence can readily establish that Plaintiff received proper wage statements in compliance with NYLL § 195(3), Plaintiff has failed to allege any injury-in-fact based on the alleged "technical" violations of NYLL § 195. Courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chang Yan Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, *18 (S.D.N.Y. Mar. 7, 2023). In other words, so-called "technical" violations of NYLL's wage notice and wage statement provisions, standing alone, cannot provide a plaintiff with a sufficiently concrete injury-in-fact to endow the plaintiff with Article III standing. *Barbosa v. Phx. Sutton Str. Inc.*, 2024 U.S. Dist. LEXIS 76536, *6 (E.D.N.Y. Apr. 26, 2024). In *Barbosa*, the Court rejected plaintiffs' standing argument that the alleged statutory violations of the FLSA and NYLL prevented plaintiffs "from being able to calculate their hours worked, and proper rates of pay, and determine if they were being paid . . . overtime hours," because the harms alleged by the plaintiffs were "informational harms," which cannot themselves meet the injury-in-fact requirement, and the informational injuries were not tied to "allege[d] downstream consequences

from failing to receive the required information" which is required "to have an Article III injury-in-fact." *Id.* at *7-8 (quoting *Harty v. West Point Realty, Inc.*, 28 F. 4th 435, 444 (2d Cir. 2022)).

Similarly, Plaintiff's allegations also fail to demonstrate an injury-in-fact. Indeed, Plaintiff's allegations of "injury," discussed in a footnote in the FAC, are similar to the allegations set forth by the plaintiffs in *Barbosa*. Plaintiff provides, *inter alia*, that Defendants' alleged failure to comply with NYLL § 195 "deprived employees of their ability to contest the pay provided by Defendant, allowed Defendant to hide their wrongdoing, and necessitated the current litigation to vindicate Plaintiff's . . . rights." (FAC ¶83, n.1). This allegation is, at most, an informational harm that has not been tied to alleged downstream consequences from failing to receive the required information. Plaintiff concedes that failure to receive said information had the result of commencing this lawsuit, without a showing that Plaintiff has an interest in using the information for any other reason. *Harty*, 28 F.4th at 444. For these reasons, Plaintiff's claims under the NYLL § 195(3) should be dismissed in their entirety.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court grant their motion to dismiss the Plaintiff's First Amended Complaint, together with such other and further relief as the Court deems just and proper.

Dated: June 27, 2025                              BOND, SCHOENECK & KING, PLLC


                                                  By:___*/s/ Rebecca K. Kimura*_____ _____
                                                         Rebecca K. Kimura, Esq.
                                                         Mary Ellen Donnelly, Esq.
                                                         Sabrina Salama, Esq.
                                                         *Attorneys for Attorneys for Defendants*
                                                         600 Third Avenue, 22nd Floor
                                                         New York, New York 10016
                                                         rkimura@bsk.com
                                                         (646) 253-2300

## CERTIFICATION

The undersigned, an attorney duly admitted to the bar of this Court, hereby certifies under the penalty of perjury that the foregoing Memorandum of Law contains 8,343 words (excluding the Cover Page, Table of Contents, and Table of Authorities), and complies with Rule 7.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, effective January 2, 2025.

*/s/ RKK*

Rebecca K. Kimura, Esq.