# EXHIBIT A



EPISCOPAL HEALTH SERVICES INC.

# Clinical Pastoral Education / Training Agreement

This Clinical Pastoral Education / Training Agreement ("Agreement"), is entered into as of the effective date outlined in this Agreement ("Effective Date") between **Russel DAVENPORT** ("Trainee") with an address of 223-17 Liden Blvd, Cambria Heights, NY 11411 and **Episcopal Health Services Inc.** ("EHS") which operates St. John's Episcopal Hospital and St. John's Medical Services P.C., with an address of 327 Beach 19th Street, Far Rockaway, NY 11691 (each a "Party" and collectively the "Parties").

## RECITAL

The Parties intend to enter into an Agreement related to patient-provider operations. EHS has been approved and accredited by the College of Pastoral Supervision and Psychotherapy, Inc. ("CPSP") for a Clincal Pastoral Eduication Training ("CPE/T") program of individuals ("Trainee" or "Trainees") and has, as a condition for the continued maintenance of such approval, agreed to abide by the standards, rules and regulations, of the CPSP.

## SECTION 1: SERVICES AND PROGRAM INFORMATION

A. Trainee shall provide services and perform duties as described herein and as otherwise determined or required by EHS and shall only engage in activities of a professional nature as approved by EHS and the CPSP, as permitted.

B. EHS will clearly delineate policies and procedures for evaluation of Trainee performance, including provisions for evaluation, promotion, demotion, retention, withdrawl, and dismissal. Such defined procedures shall also allow for due process. EHS will furnish the Trainee with a written copy of EHS's education program which will serve as a guide for training as well as, where applicable, a Trainee handbook or other EHS related documentation. EHS will also maintain a written policy that addresses closure of the training program and reduction in positions. Requirements may be modified, from time to time, as directed by EHS upon sixty (60) days prior written notice. EHS shall maintain a contingency plan for the interruption of units whether caused by EHS or the Trainee.

C. Trainee acknowledges that missing more than three (3) days of group is detrimental to the learning process and affect their ability to receive full credit for that unit. Further, extended leaves may automatically prompt an administrative withdrawal from the unit. If this is deemed warranted by EHS, Reident will be notified after 30 days of extended absence.

D. EHS shall immediately notify the Trainee, the CPSP, and, where applicable, any other required entity, of a decision or need to close a program or reduce the number of approved positions, and, if the Trainee is enrolled in the program, make every reasonable attempt to permit the Trainee to complete their training prior to taking such an action. EHS will provide the Trainee with two (2) months' severance in the event that EHS is unable to permit the Trainee to complete their training prior to the closure of the program.

E. If EHS loses its approval for this program during the Term of this Agreement, on the effective date of loss of such approval, the Trainee shall have the option to be released from this Agreement and shall not be prohibited from immediately entering another EHS program approved by the CPSP for training. If such exists, the Terms of this Agreement shall be considered to be transferred to that new program. Also, effective on the date of loss of approval, EHS shall terminate the training program, at which time the Trainee shall be granted credit for that portion of program completed and released there from.

F. Unless otherwise specified in this Agreement, EHS will provide the Trainee an evaluation of CPE/T upon satisfactory completion of EHS's CPE/T educational program. In addtition, all completed units will be registerd on the CPSP registry.

G. If the Trainee fails to pursue satisfactorily CPSP's educational and clinical program, the Director of Training at EHS shall provide the Trainee with no less than thirty (30) days prior written notice that the Trainee will be placed or

probationary status. Thereafter, if the identified deficiencies are not corrected, EHS may terminate its relationship as noted in this Agreement.

H. Trainee will be responsible to certain officers of EHS including, but not limited to, the Chief Executive Officer ("CEO").

I. Trainee reserves the right to file complaint or grievance to EHS, the Director of Training or to the CPSP advisory council and/or the diplomate's chapter.

## SECTION 2: COMPLIANCE, RECORDS MANAGEMENT, PERFORMANCE AND QUALITY

A. Policies and Compliance. Trainee shall comply with all applicable policies, procedures, bylaws, rules and regulations of EHS (collectively "EHS Policies") and all applicable rules and regulations of any accrediting, regulatory or review organizations. Trainee shall participate in EHS's compliance program ("Compliance Program"), abide by EHS's Code of Conduct and ensure that services provided or items ordered are done so in accordance with applicable Federal and New York State ("NYS" or "State") laws and regulations as well as any third party payer or contractual obligations.

B. Fraud, Waste and Abuse. Trainee is responsible for refraining from engaging in inappropriate conduct such as fostering or participating in any potential violations of Federal or State law which include, without limitation those pertaining to health care fraud, waste and abuse.

C. Privacy and Confidentiality. Trainee shall not access, acquire, use, or disclose otherwise engage in conduct which compromises the privacy or security of protected health information ("PHI"), personal information ("PI") or other private business information (e.g., business practices finances, patient information, business affairs or other information not generally known to the public) (collectively "Confidential Information") that is generated, store, maintained or transmitted by EHS in any manner not permitted under Federal or State law, including without limitation the Health Insurance Portability and Accountability Act ("HIPAA"), the Health Information Technology for Economic and Clinical Health ("HITECH") Act, the NYS Stop Hacks and Improve Electronic Data Security ("SHIELD") Act.

D. Stark and Anti-Kickback Provision. Trainee (and EHS) is prohibited from willfully and knowingly exchanging (paying or receiving) remuneration (i.e., anything of value) in return for attempts to influence or induce referrals of Federal health care program business. With limited exception as approved by EHS and as permitted under "safe harbors", Trainee, or a member of Trainee's immediate family (i.e., parent or step-parent, spouse, child, step-child, grandparent or step-grandparent), are prohibited from referring patients for designated health services where the Trainee, or their immediate family member, has a financial relationship.

E. Records Management. Trainee agrees to promptly record and maintain all information that is deemed reasonably necessary or desirable in order to enable EHS to produce timely records related to the services under this Agreement in compliance with requirements of applicable Federal or State law or EHS Policies. In the event of a request made to the Trainee from a third party records, in accordance with Federal or State law or EHS Policies and is related to the business of EHS, Trainee shall provide EHS with such request and shall promptly provide EHS with access to each record made and shall grant EHS access thereto for review and copying or other methods of production or submission, and where possible grant EHS access, prior to submitting the same. The ownership and right of control, including the production, maintenance, removal or destruction of all reports, records, and supporting documents prepared in connection with the Trainee's services, shall vest exclusively with EHS; provided, however, the Trainee shall have such right of access to and copies of such reports, records, and supporting documentation unless prohibited by applicable Federal and State law.

F. Performance Improvement and Quality Improvement. Trainee shall participate in EHS's performance and quality improvement programs of which quality indicators are selected or approved by EHS. Such may be based on population health, disease prevention, patient safety and initiatives promoted by various State and Federal agencies. From time to time, Trainee performance will be assessed based on satisfaction of these performance and quality indicators, which may also be used for credentialing and privileging purposes.

G. Investigations. Trainee shall cooperate, to the extent possible, with an investigation, audit or inquiry conducted by EHS or by other persons or entities duly authorized by the Federal, State and local government.

## SECTION 3: CONFLICTS OF INTEREST

A. Relationship with EHS and Outside Work. During the Term of this Agreement Trainee shall refrain from:
   1. Soliciting or engaging in any business relationship with patients of EHS;
   2. Directly or indirectly requesting or advising patients of EHS, their caregivers or families, to withdraw, curtail, or cancel a patient's business relationship with EHS;
   3. Soliciting, inducing or enticing vendors or others under contract with EHS to leave EHS to engage in a business relationship with or employment by the Trainee or for any other the purpose which can result in the personal benefit of such Trainee; or
   4. Soliciting, inducing or enticing individuals employed by EHS to leave EHS to engage in a business relationship with or employment by the Trainee or for any other the purpose which can result in the personal benefit of such Trainee.

## SECTION 4: COMPENSATION AND BENEFITS

A. Compensation. Trainee will receive base compensation/stipend for their work as outlined in this Agreement. Compensation is subject to customary withholdings and deductions (if applicable and shall be payable in biweekly installments determined by and in accordance with EHS's processes.

B. Benefits. Any benefits (*e.g.*, insurance, workers compensation, medical, dental, vacation-prorated based on hours worked, etc.) provided by EHS for Trainees are consistent with EHS policy and those offered to others of the same roleand upon determination by the CPSP or EHS, whichever is specifically applicable.

C. Continuing Education ("CE") Costs. EHS shall reimburse annually, for costs associated with travel, lodging, annual meetings and other continuing education directly related to the role of the Trainee, which are authorized in advance in writing by EHS and which may be required by EHS or by the CPSP.

## SECTION 5: TERM AND TERMINATION

A. Term. This Agreement shall commence on the Effective Date and shall remain in effect for a period of twelve (12) months unless sooner terminated, as provided for in this Section. After such Term has expired, each Party may choose to enter into a new Agreement.

B. Termination for Cause. EHS shall have the right to terminate this Agreement immediately upon the occurrence of any of the following:
   1. Upon the exclusion from participation in any Federally funded health care program or government program;
   2. Termination of employment or c
   3. Trainee's death or failure to meet EHS's health assessment requirements;
   4. Trainee's inability to perform the essential functions or duties of their position (including with reasonable accommodation, if applicable);
   5. Trainee's unapproved extended absence and/or failure to complete units which prompts consideration ro or actual withdrawal from the program;
   6. Trainee's gross failure to abide by EHS Policies, EHS's Compliance Program or EHS's Code of Conduct;
   7. Conviction of Trainee (including by plea) of a crime, under Federal, State or local law, which is determined by EHS to be materially related to their role or function as a Trainee;
   8. Trainee's breach of a material term of this Agreement which is not cured to the reasonable satisfaction of EHS within thirty business (30) days after receiving written notice of such breach;
   9. Conduct by the Trainee that, in the good faith opinion of EHS, threatens the health, safety or welfare of patients or personnel, which demonstrates a failure to carry out one's professional responsibilities or is otherwise contrary to the best interest of EHS and/or materially and adversely affects the licensure or accreditation status of EHS; or
   10. Failure to pursue satisfactorily, the educational and clinical program (with due notice as required by EHS and after probationary status notification has been provided).

C. <u>No Cause Termination.</u> This Agreement may be terminated by either Party without cause upon ninety (90) days prior written notice. This Agreement may also be terminated without cause upon mutual agreement by both Parties at any time and/or in conjunction with Trainee's resignation or other separation from EHS.

D. <u>Amendments.</u> This Agreement may be amended by agreement of both parties, but no such amendment shall be binding on either party unless it is in writing, signed by both parties and approved as required by law.

E. <u>Trainee Agreement Termination Specifics.</u> In the event of the following:
   1. Any Termination for Cause, EHS shall determine the amount of credit, if any, toward satisfying CPSP education requirements to be awarded to the Trainee.
   2. Any Termination for Cause, EHS reserves the right to not issue another Agreement for a period of one (1) year from the date of termination, unless sooner exonerated.
   3. Trainee unilaterally terminates this contract in order to participate in a program which does not have CPSP approval, the Trainee, as a result, may be denied access to the CPSP training approval process thereafter.

## SECTION 6: MISCELLANEOUS

A. Any notice or other communication required to be given under this Agreement shall be in writing and sent overnight delivery or by certified mail, return receipt requested, to EHS or address specified by the Trainee. Email or other electronic form of communication may be used to confirm delivery, receipt or transmittal.

B. This Agreement shall be governed by and construed in accordance with State law. The Parties shall submit to the jurisdiction of Federal or State courts in Nassau County for resolution of any disputes arising hereunder.

C. This Agreement may be executed via PDF (or electronic image only) signatures, in two (2) or more separate or multiple counterparts, each of which shall be deemed an original, and which shall be effective even if not all Parties shall have executed the same counterpart, but all such counterparts shall together evidence and constitute a single Agreement.

## SECTION 7: TRAINEE SPECIFIC INFORMATION

| | |
|---|---|
| Trainee Phone: (516) 318-2257 | Trainee Email: |
| Term Period: May 23, 2022 to May 22, 20223 | Department: Pastoral Care |
| Effective/Start Date: May 23, 2022 | Compensation/Stipend: 40,614.94 |

**This Agreement is hereby entered into by the Parties as identified below:**

The Parties understand and agree that, effective upon the execution of this Agreement, all previous agreements between the Parties regarding the subject matter of this Agreement are terminated and of no further force or effect.

**EHS PASTORAL CARE DIRECTOR**
SIGNATURE: _/s/ Asnel Valcin_
NAME: Asnel Valcin
DATE: 04/28/2022

**CLINICAL PASTORAL TRAINEE**
SIGNATURE: _/s/ R._
NAME: Russell Davenport
DATE: 4-28-22

**EHS SIGNATORY AUTHORITY**
SIGNATURE:

NAME: Gerard M. Walsh
TITLE: Chief Executive Officer
DATE:

Clinical Pastoral Trainee Agreement (Rev. 3/22)