## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

RUSSELL DAVENPORT,

               *Plaintiff*,

      - against -

EPISCOPAL HEALTH SERVICES, INC.,
ST. JOHN'S EPISCOPAL HOSPITAL
SOUTH SHORE, and ASNEL VALCIN,

          *Defendants*.

Case No.: 1:24-cv-8821 (RPK) (LB)

 

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

### TA LEGAL GROUP PLLC
Taimur Alamgir, Esq.
205 East Main Street, Suite 3-2
Huntington, NY 11743
Tel.: (914) 552-2669
tim@talegalgroup.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................. .................................. 1

ARGUMENT ....................................................................... 3

   1. DISMISSAL OF PLAINTIFF'S DISCRIMINATION CLAIMS IS UNWARRANTED
........................................................................................................... 4

     A. Gender Discrimination ............................................ 4

     B. Religious Discrimination ............................................ ...............................8

   2. DISMISSAL OF PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS IS
UNWARRANTED ................................................ ...............................................10

   3. DISMISSAL OF THE RETALIATION CLAIMS IS UNWARRANTED ................. ...12

     A. NYSHRL and NYCHRL ............................................ ....................................... 12

     B. Title IX ................................................ ................................................. 14

     C. NPCL § 715-b ................................................ .................................................. 15

   4. DISMISSAL OF PLAINTIFF'S WAGE AND HOUR CLAIMS IS UNWARRANTED
................................................................................................................... 17

     CONCLUSION ................................................ ..................................19

# TABLE OF AUTHORITIES

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ................................................................. 3

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ................................................. 3

United States ex rel. Foreman v. AECOM, 19 F.4th 85 (2d Cir. 2021) ..... ........................... 3, 15

DiFolco v. MSNBC Cable LLC, 622 F.3d 104 (2d Cir. 2010) ............. ............... 3

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002) ............. .................... 3

Deluca v. AccessIT Group, Inc., 695 F. Supp. 2d 54 (S.D.N.Y 2010) ...... ..................... 3

Carrico v. Duo Wen, Inc., No. 23-cv-00927, 2024 U.S. Dist. LEXIS 153945 (S.D.N.Y. Aug. 27, 2024) ..................................................................................... 3

Wheeler v. Praxair Surface Techs., Inc., 694 F. Supp. 3d 432 (S.D.N.Y. 2023)
.................................................................................................................. 4, 11

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102 (2d Cir. 2013)
.............................................................................................................. 4, 11, 13

Moore v. Hadestown Broadway Ltd. Liab. Co., 722 F. Supp. 3d 229 (S.D.N.Y. 2024)
...................................................................................................................... 4

Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72 (2d Cir. 2015) .... 7, 13

Leibowitz v. Cornell Univ., 584 F.3d 487 (2d Cir. 2009) ............. ................................ 7

Wellington v. Spencer-Edwards, 2017 U.S. Dist. LEXIS 162788 (S.D.N.Y. Sept. 28, 2017)
...................................................................................................................... 7

Hayes v. G&E Real Est. Mgmt. Servs., No. 24-cv-01459 (ER), 2025 U.S. Dist. LEXIS 43237 (S.D.N.Y. Mar. 10, 2025) ....................................................... 7

Brown v. Daikin Am. Inc., 756 F.3d 219 (2d Cir. 2014) ....................................... 8

Doe v. Columbia Univ., 831 F.3d 46 (2d Cir. 2016) .............................................. 9

Bailey v. N.Y. Law Sch., 2017 U.S. Dist. LEXIS 29653 (S.D.N.Y. Mar. 1, 2017)
...................................................................................................................... 9

Alaei v. State Univ. of N.Y. at Albany, No. 1:21-cv-00377 (BKS/TWD), 2024 U.S. Dist. LEXIS 103268 (N.D.N.Y. June 11, 2024) ....................................... 9

Doe v. Columbia Univ., 551 F. Supp. 3d 433 (S.D.N.Y. 2021) ........................... 9

Gahfi v. N.Y.C. Dep't of Educ., 2025 U.S. Dist. LEXIS 37633 (E.D.N.Y. Feb. 28, 2025)
.................................................. ............................................................... 10

Summa v. Hofstra Univ., 708 F.3d 115 (2d Cir. 2013) .................. ...................................... 11, 15

Littlejohn v. City of New York, 795 F.3d 297 (2d Cir. 2015) ................................................ 11, 13

Jackson v. Birmingham Bd. of Educ., 544 U.S. 167 (2005) ........................................ 14

Ochei v. Coler/Goldwater Mem'l Hosp., 450 F. Supp. 2d 275 (S.D.N.Y. 2006)
.................................................. ......................................................................................16

People v. Nat'l Rifle Ass'n of Am., Inc., 2022 NY Slip Op 22057, 74 Misc. 3d 998, 165 N.Y.S.3d
234 (Sup. Ct.) ................................................................................................................ 16

Herrera v. Comme Des Garcons, Ltd., 84 F.4th 110 (2d Cir. 2023) ....... ................................... 17

Isayeva v. Braces, 2024 U.S. Dist. LEXIS 41769 (S.D.N.Y. Mar. 11, 2024) ...........................17

Brain v. The Execu-Search Grp., LLC, No. 22 Civ. 8219 (MKV), 2024 U.S. Dist. LEXIS 34420,
2024 WL 838085 (S.D.N.Y. Feb. 28, 2024) ...... ...............................................................17

Zubair v. Entech Eng'g P.C., 715 F. Supp. 2d 541 (S.D.N.Y. 2010) .......................................... 18

Doolittle v. Bloomberg L.P., 2023 U.S. Dist. LEXIS 194764, 2023 WL 7151718 (S.D.N.Y. Oct.
31, 2023) .................................... ................................................................................. 19

# PRELIMINARY STATEMENT

Plaintiff, by and through undersigned counsel, respectfully submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).

In Opposition to the Motion (the "Opposition"), Defendants Episcopal Health Services, Inc. ("EHS"), St. John's Episcopal Hospital South Shore ("St. John's"), and Asnel Valcin ("Valcin") (collectively, "Defendants") provide zero justification for dismissal of any claims. The Motion should be denied for the following reasons:

*First*, Defendants' Motion severely distorts Plaintiff's allegations to create various false impressions – namely, that there was no discrimination, retaliation, or hostile work environment. The Court should reject Defendants' efforts to distract from the numerous glaring violations of law alleged in the FAC.

*Second*, as to gender discrimination, Plaintiff was evidently treated "less well" because he is a man. When Plaintiff was sexually harassed and complained about it, Defendants ignored the clear evidence of sexual harassment and refused to impose any consequences whatsoever, in contravention of Defendants' own sexual harassment policy. When Plaintiff was the subject of a bogus sexual harassment claim, he was immediately suspended before any investigation. Even though Plaintiff was cleared, Defendant Valcin immediately terminated him in the same meeting, because Plaintiff once again voiced a protected complaint. Moreover, the non-renewal of Plaintiff's contract

*Third*, as to religious discrimination, Plaintiff was not permitted to wear his yoke even though members of other religious faiths were permitted to wear religious garments associated with their respective religions. Defendants' contention that Plaintiff's wearing of his yoke was

1

confusing is offensive, and confirms religious discrimination and animus.

*Fourth*, Defendants' sanitized version of events ignores key facts confirming the hostility of the work environment. Sexual harassment and regular discriminatory and demeaning attacks by Defendant Valcin clearly surpass the minimal threshold for hostile work environment under the NYSHRL and NYCHRL.

*Fifth*, Plaintiff was repeatedly retaliated against in direct response to complaints in the recent past. For making protected complaints in February 2023 about discrimination, and about how his sexual harassment claim against Chaplain Obiyo was handled in violation of Defendants' own policies, Defendants suspended him based on a bogus sexual harassment allegation without bothering to investigate. Then, in response to his repeated complaints in March and April 2023 about the discriminatory and retaliatory way in which he was treated,, Defendants retaliated again, terminating Plaintiff and denying renewal of his contract. As noted, the last of these protected complaints occurred right after Plaintiff made his protected complaint, in the same April 2023 meeting. Temporal proximity overcomes Defendants' motion.

*Sixth*, Defendants cite the wrong whistleblower policy in an effort to mislead the Court. The sexual harassment policy – which details the proper procedures – in cited in the complaint. Because the extrinsic policy cited by Defendants is different than the policy alleged in the FAC, the Court should not consider such outside evidence at this preliminary stage. Moreover, Defendants

*Seventh*, Plaintiff's wage and hour claims meet the pleading standards set by the Second Circuit for overtime claims. Defendants' reliance on the extrinsic stipend agreement is improper at this stage as the stipend is contrary to the allegations and Plaintiff's paystubs (which show hourly pay). The stipend says nothing whatsoever about overtime and does not defeat Plaintiff's overtime

claim. Moreover, Defendants' presentation of the stipend agreement undermines their argument for dismissal of Plaintiff's Sec. 195.1 and 195.3 claims.

<u>**ARGUMENT**</u>

This action arises from Plaintiff's employment and participation in the Clinical Pastoral Education ("CPE") Program operated by Defendants at St. John's Episcopal Hospital. Plaintiff, Archbishop of the Holy Christian Orthodox Church. In February 2022, Archbishop Davenport was hired by Defendants and admitted to the CPE Program as a Chaplain Resident. During his employment, Davenport suffered discrimination at the hands of his employer and filed the FAC alleging claims of gender and religious discrimination, hostile work environment, and retaliation under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"); gender discrimination under Title IX of the Education Amendments of 1972; retaliation under Not-for-Profit Corporation Law ("NPCL") § 715-b; and collective and class-wide wage and hour violations under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

Contrary to Defendants' assertions, the Complaint sets forth detailed, plausible, and well-supported factual allegations that more than satisfy the pleading requirements of Federal Rule of Civil Procedure 8 and Rule 12(b)(6). A complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that the plausibility standard is not a probability requirement, but simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the claim. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In deciding a motion to dismiss, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor," further finding

that factual allegations <u>must</u> be credited at this stage. *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

"When considering a motion to dismiss, the Court's review is confined to the complaint and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC,* 622 F.3d 104, 111 (2d Cir. 2010). Documents not incorporated by reference may only be considered where the complaint relies heavily upon its terms and effect such that the document is "integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Moreover, for judicial notice of an integral document to be taken, it must be clear on the record that no material dispute of fact exists regarding the "authenticity or accuracy of the document" or "the relevance of the document." *Deluca v. AccessIT Group, Inc*., 695 F. Supp. 2d 54, 60 (S.D.N.Y 2010). Notably, judicial notice as to any document on a motion to dismiss is not proper where a plaintiff raises "questions as to the document's authenticity and accuracy." *Carrico v. Duo Wen, Inc*., No. 23-cv-00927, 2024 U.S. Dist. LEXIS 153945, at *10 (S.D.N.Y. Aug. 27, 2024).

Here, Defendants rely upon- the Residency Agreement (Exhibit A) and the Compliance Program Policy and Procedure Manual, which sets forth a purported whistleblower policy (Exhibit B). Neither of these documents is appropriately incorporated by reference. Moreover, the terms of and effect of neither document is relied upon such that the document is rendered integral to the complaint. Because these documents are disputed, as discussed below, neither is the appropriate subject of judicial notice. As shown below, the FAC is grounded in specific factual allegations, not speculation. For the reasons set forth below, Plaintiff respectfully submits that the Complaint

is botis both legally and factually sufficient and that Defendants' motion to dismiss should be denied in its entirety.

## I.   DISMISSAL OF PLAINTIFF'S DISCRIMINATION CLAIMS IS UNWARRANTED

The FAC articulates plausible allegations of both gender and religious discrimination under the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and Title IX of the Education Amendments of 1972. Defendants' arguments to the contrary are unavailing at the pleading stage, as the Complaint alleges facts which, if accepted as true and viewed in the light most favorable to Plaintiff, more than suffice to state claims for relief under the applicable legal standards.

### A - Gender Discrimination

At the pleading stage, a plaintiff need only allege facts supporting an inference of discrimination; the sufficiency of comparators or the precise nature of the adverse action is a factual issue not appropriate for resolution on a motion to dismiss. *See Wheeler v. Praxair Surface Techs., In*c., 694 F. Supp. 3d 432, 455 (S.D.N.Y. 2023).

Under the NYSHRL and NYCHRL, [1] a plaintiff need only demonstrate he was treated less well than other employees because of his gender. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F.3d 102, 110 (2d Cir. 2013). Relative to federal anti-discrimination statutues, standards of discrimination under the NYSHRL and NYCHRL are broader and more liberally construed in favor of plaintiff. *Moore v. Hadestown Broadway Ltd. Liab. Co*., 722 F. Supp. 3d 229, 245 (S.D.N.Y. 2024).

---

[1] Following the New York legislature's 2019 amendment to the NYSHRL, courts must now scrutinize discrimination claims brought pursuant to the NYSHRL under the same lenient pleading standard described above under which NYCHRL discrimination claims are analyzed. See *Doolittle v. Bloomberg L.P*., 2023 U.S. Dist. LEXIS 194764, 2023 WL 7151718, at *7 (S.D.N.Y. Oct. 31, 2023)

Here, the Complaint alleges that Plaintiff was treated less well than similarly situated female employees in the handling of harassment complaints and in the imposition of adverse actions, including suspension, public admonishment by Valcin, and non-renewal of his residency.

The Complaint alleges that Plaintiff, a male, was subjected to disparate treatment on the basis of gender in the handling of harassment complaints and in the terms and conditions of his employment by Defendants and participation in the CPE Program.

Specifically, Plaintiff alleges that when he made a complaint of sexual harassment in December 2022, by Chaplain Obiyo (a female worker). According to Defendants' Sexual Harassment policy, as set forth in the FAC-

> *Upon receipt of complaint, the Human Resources Department will conduct an immediate review of the allegations, and take any interim actions (e.g., instructing the respondent to refrain from communications with the complainant), as appropriate. The Hospital will create a written documentation of the investigation (such as a letter, memo or email), which contains the following:*
>
> *-A list of all documents reviewed, along with a detailed summary of relevant documents;*
> *- A list of names of those interviewed, along with a detailed summary of their statements;*
> *- A timeline of events;*
> *- A summary of prior relevant incidents, reported or unreported; and*
> *- The basis for the decision and final resolution of the complaint, together with any corrective action(s)*

Defendants did none of the above, and in fact took no discernible action to the protected complaint by Plaintiff. The investigation conducted was cursory and failed to consider the evidence Plaintiff submitted, as set forth in the FAC. Furthermore, mere days later Davenport complained to Valcin that Chaplain Obiyo was continuing to enter his office despite his serious complaint of sexual harassment. FAC ¶¶ 119. Valcin disregarded this protected complaint and

refused to take any action or restrict Chaplain Obiyo's access to the office further violating Defendants' own sexual harassment policy. FAC ¶¶ 120.

Contrast that with Defendants' handling of the Complaint the complaint filed by a female clerk, Stephanie, against Plaintiff in March 2023. The unsubstantiated allegation by Stephanie was investigated and prosecuted could not have been any more different than the cursory and bias-tainted investigation of Archbishop Davenport's own well-substantiated complaint. There, Davenport was called before a group and asked simply and accusatorily by Valcin to "explain your actions." FAC ¶¶ 148. This was a complete and utter violation of every investigatory step in the sexual harassment policy, or even in Exhibit B. Plaintiff alleges that Valcin's public display was intended to embarrass and humiliate him. As the FAC states, there was no attempt at a meaningful investigation beyond this public castigation yet, days later, Valcin suspended Davenport, and ultimately terminated him and denied renewal of his contract because of his complaints about the blatantly discriminatory and different treatment of the two complaints.

Defendants fail to take into account that a discrimination plaintiff can survive a motion to dismiss by creating a "mosaic" of intentional discrimination by identifying "bits and pieces of evidence" that together give rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). Plaintiff can prove his case by demonstrating circumstances including, but not limited to, the employer's criticism of her performance in degrading terms, invidious comments about people in the plaintiff's protected group, favorable treatment of employees outside Plaintiff's gender, or the sequence of events leading up to the plaintiff's discharge. *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009); *Wellington v. Spencer-Edwards,* 2017 U.S. Dist. LEXIS 162788, *10 (S.D.N.Y. Sept. 28, 2017). Discrimination is evident as Plaintiff alleges that Valcin was responsible for the discriminatory conduct – i.e., the

interrogation after Plaintiff's allegations and his other comments regarding Plaintiff, and the suspension and termination. *See Hayes v. G&E Real Est. Mgmt. Servs.*, No. 24-cv-01459 (ER), 2025 U.S. Dist. LEXIS 43237, at *20-21 (S.D.N.Y. Mar. 10, 2025) ("Where, as here, the same supervisor who made the allegedly racist remarks also took the adverse action, it is much easier to find an inference of discrimination.").

Plaintiff can additionally show gender discrimination in the differences inherent between the unlawful and procedurally improper investigation of the claim against him, and the cursory and preordained investigation conducted in respect to Chaplain Obiyo. In this regard, "the plaintiff's and comparator's circumstances must bear a reasonably close resemblance." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (internal quotation marks omitted). They need not, however, be "identical." *Id.* Plaintiff does not merely feel discriminated against; the FAC points to specific evidence confirming that discrimination occurred

With respect to Title IX, the Complaint alleges that Plaintiff was subjected to discrimination in an educational program receiving federal financial assistance, and that he was excluded from participation in, denied the benefits of, or otherwise discriminated against on the basis of sex. The termination of Plaintiff's residency contract, the denial of advancement opportunities, and the disparate handling of complaints by Defendants (both in violation of Defendants' sexual harassment investigation policy) are all plausibly alleged to be gender-based adverse actions.

Defendants' claims are without merit, the existence of another male chaplain in the program does not defeat Plaintiff's claims and the reasons for non-renewal are themselves alleged to be pretextual and discriminatory. Second Circuit precedent holds that plausible allegations that an education program's investigative and adjudicative processes were motivated by sex bias, such

as Plaintiff's, are sufficient to state a claim under Title IX. *Doe v. Columbia Univ.*, 831 F.3d 46, 58 (2d Cir. 2016) (accused male plaintiff stated Title IX claim by plausibly alleging that the that investigator and decisionmakers were motivated to side "with the accusing female....") Defendants' assertion that conducting so-called "investigations" absolves them of Title IX liability – notwithstanding that bias in the investigations are the basis for Plaintiff's claim – is meritless. Defendants argue that Plaintiff fails to allege a denial of benefits for Title IX purposes. This position rests on a remarkable false claim – *that the Complaint purportedly "acknowledges" that Plaintiff was "permitted to finish the Program and receive his certificate at the end of the Program."* **The FAC says nothing about any "certificate," and expressly alleges that Plaintiff was <u>not</u> allowed to "complete the full course". FAC.**.  Even assuming that Defendants' wildly false claims were true, Plaintiff still suffered a cognizable denial of benefits in the non-renewaal of his contract. *See, e.g.*, *Bailey v. N.Y. Law Sch.*, 2017 U.S. Dist. LEXIS 29653, at *20 (S.D.N.Y. Mar. 1, 2017) (plaintiff stated Title IX claim based on poor grades following return). In this regard, the non-renewal of Plaintiff's educational contract constituted a denial of benefits under Title IX. *See, e.g.*, *Alaei v. State Univ. of N.Y. at Albany*, No. 1:21-cv-00377 (BKS/TWD), 2024 U.S. Dist. LEXIS 103268, at *31 (N.D.N.Y. June 11, 2024). Interim suspension similarly is considered a denial of benefits for Title IX purposes. *Doe v. Columbia Univ.*, 551 F. Supp. 3d 433, 468-69 (S.D.N.Y. 2021) ("interim suspension deprives a student of the benefits of education.") As explained in the FAC, the non-renewal of Plaintiff's contract caused substantial harm to Plaintiff's life and his professional prospects.

## B - Religious Discrimination

The Complaint further alleges that Plaintiff was subjected to religious discrimination in violation of both the NYSHRL and NYCHRL. Specifically, Plaintiff pleads that he was expressly

prohibited from wearing his yoke—a religious garment integral to his faith—while on duty, notwithstanding that other chaplains of different faiths, including a Muslim chaplain (permitted to wear a hijab), a Jewish chaplain (permitted to wear a kippah), and Roman Catholic chaplains (permitted to wear yokes), were allowed to wear religious attire in accordance with their respective traditions. FAC ¶¶ 87-88. Director Valcin (who is a Seventh Day Adventist) publicly admonished Archbishop Davenport for wearing his yoke in accordance with his religious and cultural practices, explicitly admonishing Archbishop Davenport "**You can't wear that around here!**" FAC ¶¶ 90. This was not a one-off incident, as the admonishment against Davenport's religious exercise occurred at least 7 or 8 times in February 2023 and March 2023. FAC ¶¶ 94. Plaintiff also alleges that he made protected complaints regarding this discriminatory treatment, and that Defendants' purported justification (that the yoke would cause "confusion" among patients. Davenport Decl. ¶¶ 93) was pretextual and not applied to other faiths or denominations. The only *confusion* present was the different rules and disparate treatment the different religious observers were given. This is offensive and clearly discriminatory.

These allegations, when accepted as true and viewed in the light most favorable to Plaintiff, are more than sufficient to state a claim for religious discrimination under both the NYSHRL and NYCHRL.

Defendants' argument that the Residency Agreement does not guarantee the right to wear specific religious attire, or that the restriction was based on patient confusion, presents a factual dispute that cannot be resolved on a motion to dismiss. The Complaint identifies similarly situated religious observers who were treated more favorably, alleges that the restriction on religious attire was selectively enforced against Plaintiff because of his religious denomination, and pleads facts supporting an inference of discriminatory motive. See *Gahfi v. N.Y.C. Dep't of*

*Educ.*, 2025 U.S. Dist. LEXIS 37633, *17 (E.D.N.Y. Feb. 28, 2025).*

Plaintiff's claims for religious discrimination are well-pled, supported by specific factual allegations, and controlling legal authority. Defendants' arguments for dismissal are without merit, and the motion to dismiss these claims should be denied in its entirety.

## II. DISMISSAL OF PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS IS UNWARRANTED

Plaintiff's hostile work environment claims under the NYSHRL and NYCHRL are amply supported by detailed factual allegations that, when taken as true and viewed collectively, rise well above the level of petty slights. The Complaint alleges a pattern of repeated public admonishment and humiliation by Director Valcin, including at least 7-8 instances in which Plaintiff was singled out and rebuked for wearing his yoke in accordance with his religious tradition, as well as other disparaging comments and conduct that were both targeted and persistent. FAC.

Plaintiff further alleges that this conduct was not isolated, but part of a broader course of targeted, retaliatory treatment stemming from his initial sexual harassment complaint against Chaplain Obiyo and the ensuing complaint that no meaningful investigation was conducted pursuant to Defendants' own sexual harassment policies. FAC.

The timeline of events supports this conclusion. The complaint against Chaplain Obiyo was filed in December 2022. In early February 2023, Davenport questioned the integrity of the investigation and the dubious nature of how it was handled. A few weeks later, the campaign of retaliation began. Valcin first singled out and targeted Davenport's religious yoke. Then, the handling and public humiliation of Davenport with regard to Stephanie's baseless allegation, followed by immediate suspension, and further humiliation. As noted above, Plaintiff was immediately dismissed when he made a further complaint in April 2023 even though he was

cleared of sexual harassment.

To state a hostile work environment claim under the NYCHRL, a plaintiff need only allege that he was treated less well than other employees because of a protected characteristic and that the retaliatory conduct was driven by a discriminatory motive. See *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). The same standar

The NYSHRL similarly requires that the alleged conduct be severe or pervasive enough to create an objectively hostile or abusive work environment, and that courts consider the *totality of the circumstances*, including the frequency and severity of the conduct, whether it was physically threatening or humiliating, and whether it unreasonably interfered with the plaintiff's work performance. See *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013); *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 455 (S.D.N.Y. 2023).

Defendants' motion to dismiss argues that the conduct alleged was not sufficiently severe or pervasive, or that any remedial actions taken were adequate. Whether a work environment is sufficiently hostile is generally a question of fact for the jury, and not appropriate for resolution on a motion to dismiss. See *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015).

Accordingly, when viewed in the light most favorable to Plaintiff, the hostile work environment claims are more than sufficiently pled under the applicable legal standards, and any factual disputes regarding the severity, pervasiveness, or impact of the alleged conduct must be reserved for discovery and trial. Defendants' motion to dismiss these claims should therefore be denied.

## III.    DISMISSAL OF THE RETALIATION CLAIMS IS UNWARRANTED

Plaintiff's Complaint pleads all required elements of retaliation under the NYSHRL, NYCHRL, Title IX, and NPCL § 715-b, each of which is supported by specific factual allegations.

### A - NYSHRL and NYCHRL

The Complaint alleges that Plaintiff engaged in protected activity by making multiple complaints of discrimination and harassment, both internally and in writing to Human Resources and supervisors. Defendants were indisputably aware of these protected activities, as evidenced by their own investigation, written correspondence, and the sequence of events set forth in the Complaint.

Following Plaintiff's protected activity, Defendants subjected him to a series of materially adverse actions, including, but not limited to: repeated public humiliation and admonishment for wearing his yoke in accordance with his religious tradition; denial of a promised liaison appointment; exclusion from advancement opportunities; and, ultimately, non-renewal of his Residency Agreement under pretextual circumstances—all of which are specifically pled in the Complaint.

To state a claim for retaliation under the NYSHRL and NYCHRL, a plaintiff must allege (1) participation in a protected activity; (2) knowledge by the defendant; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse action. See *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013).

Notably, the NYCHRL provides a broader approach than its federal and state counterparts, requiring only that the challenged conduct would be reasonably likely to deter a person from engaging in protected activity, and not necessarily that it rise to the level of a materially adverse employment action under federal law. See *Mihalik*, 715 F.3d at 112.

Defendants' arguments that the alleged adverse actions are not materially adverse, or that there is no causal connection, are premature at this stage. Whether an action is materially adverse

or causally connected to protected activity is a classic question of fact for the jury, not suitable for resolution on a motion to dismiss. *See Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015).

The Complaint's allegations of a pattern of adverse actions closely following Plaintiff's protected activity—including suspension, public rebuke by his supervisor Valcin, and non-renewal—are more than sufficient to support an inference of causation at this stage.

First, as noted herein, Plaintiff was suspended within 2 months of his February 2023 protected complaints. This is clear retaliation. So too was Director Valcin's unlawful decision to terminate and deny renewal to Archbishop Davenport occurred **mere minutes** after Archbishop Davenport's protected complaint during the meeting (and approximately 1 month after the March 24, 2023 written complaint). FAC ¶¶ 157.

Temporal proximity sufficient to overcome the motion to dismiss is evident. *Summa v. Hofstra Univ.,* 708 F.3d 115, 128 (2d Cir. 2013) (finding **temporal proximity** when "the adverse action occurred at the first actual opportunity to retaliate"). …" see also *LeRario v. N.Y.-*

*Presbyterian/Queens*, No. 20-cv-6295 (JGK), 2022 U.S. Dist. LEXIS 190379, at *9 (S.D.N.Y. Oct. 18, 2022).

The NYCHRL's broad remedial purpose further compels denial of dismissal where, as here, the complaint plausibly alleges that Defendants' conduct would deter a reasonable person from engaging in protected activity.

Accordingly, Plaintiff's retaliation claims under the NYSHRL and NYCHRL are well-pled, supported by both factual allegations and controlling legal authority, and Defendants' motion to dismiss these claims should be denied.

### B - Title IX

Plaintiff's retaliation claim under Title IX is well-pled and supported by both the factual record. The Complaint alleges that Plaintiff was excluded from participation in, and denied the benefits of, the CPE Program in direct retaliation for his protected complaints of discrimination and harassment.

The non-renewal of Plaintiff's contract, denial of advancement, and imposition of adverse measures are all plausibly alleged to have been taken in retaliation for Plaintiff's protected activity. The Complaint further alleges that these *adverse actions* were not based on legitimate needs, but were pretextual and motivated by retaliatory animus. Adverse actions include any conduct that would dissuade a reasonable person from engaging in protected activity. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005).

A claim for retaliation under Title IX, a plaintiff must allege (1) participation in protected activity, (2) knowledge by the defendant, (3) an adverse action, and (4) a causal connection between the protected activity and the adverse action. See *Summa v. Hofstra Univ.*, 708 F.3d 115,

125 (2d Cir. 2013). At the pleading stage, temporal proximity and a pattern of adverse actions are sufficient to support an inference of causation. See *Summa*, 708 F.3d at 127.

Factual disputes regarding the sufficiency of the causal connection, the nature of the adverse actions, or the employer's motive are not grounds for dismissal at this stage. See *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

Here, the Complaint alleges a clear sequence of protected activity followed by adverse actions, and the allegations of pretext and retaliatory motive are more than sufficient to state a claim.

Retaliation under the NYCHRL and NYSHRL is clear from Plaintiff's allegations that Defendants subjected him to (i) retaliatory suspension and the investigation in March 2023, because of his February 2023 protected complaint to HR regarding the investigation of his sexual harassment complaint and (ii) non-renewal, because of his protected complaints in late March 2023 and during the late April 2023 meeting (the non-renewal decision occurred immediately after the latter).

Defendants' arguments regarding causation or the legitimacy of the adverse actions raise factual issues that must be reserved for discovery and trial. Accordingly, Plaintiff's Title IX retaliation claim is well-pled and should not be dismissed.

### C - NPCL § 715-b

With respect to NPCL § 715-b, Plaintiff alleges that Defendants failed to comply with both the substance and implementation of their whistleblower policy. The Complaint details that, notwithstanding the existence of a written policy, Defendants failed to follow the required

procedures for investigating and remedying Plaintiff's complaints, failed to protect Plaintiff from retaliation, and failed to ensure that the policy was meaningfully enforced.

First, the applicable whistleblower policy at bar is the sexual harassment policy quoted in the FAC, which contains whistleblower and investigation provisions specific to sexual harassment claims such as those alleged here. Defendants' whistleblower policy (Ex. B to the Valcin Declaration) is not incorporated by reference, nor integral to the complaint.

Moreover, the FAC's allegations suffice to show that Defendants failed to supervise or enforce the policy set forth at Ex. B to the Valcin declaration, which provides as follows: "Personnel, Board Members or other individuals or entities who engage in non- compliance, violations of this policy or any form of retaliation or intimidation will be subject to action which includes but is not limited to termination of employment, contract or other affiliation with EHS."

As the FAC relates, there was significant retaliation against Plaintiff because he made protected complaints, including his

At the very least, the Court cannot resolve the factual dispute of its applicability at this juncture.

The mere existence of a policy on paper is patently insufficient when the Complaint itself alleges that Defendants' actual practices were inconsistent with statutory requirements and the policy's own terms. The adequacy of a whistleblower policy's implementation, and *whether the employer's response to protected complaints was sufficient, are a question of fact not appropriate for resolution on a motion to dismiss*. See *Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275, 286 (S.D.N.Y. 2006).

Retaliation under NPCL 715-b is also adequately plead based on Plaintiff's allegations that Defendants failed to properly oversee or enforce their own whistleblower policies, and in fact

violated such policies by retaliating against Plaintiff because of his protected complaints. *In People v. Nat'l Rifle Ass'n of Am., Inc.*, 2022 NY Slip Op 22057, ¶ 15 (Sup. Ct.), an NPCL 715-b claims was allowed to proceed where Ithe "NRA violated the N-PCL, the EPTL, and its own policies by permitting Powell and LaPierre to retaliate against whistleblowers, and for failing to supervise Frazer's allegedly incompetent performance of his responsibilities in carrying out the NRA's whistleblower policy …" In addition, the NRA "failed to adequately document what steps, if any, it took in response to whistleblower complaints, and failed to provide information about the whistleblowers to its independent auditor])…." *People v. Nat'l Rifle Ass'n of Am., Inc.*, 2022 NY Slip Op 22057, ¶ 16, 74 Misc. 3d 998, 1028, 165 N.Y.S.3d 234, 255 (Sup. Ct.). Here, likewise, Defendants' failure to supervise or enforce their own whistleblower policies, resulting in harassment and retaliation as to Plaintiff, means that this claim must be allowed to proceed.

The FAC identifies specific deficiencies in Defendants' response, including the lack of due process, failure to prevent or remedy retaliation, and the imposition of adverse actions against Plaintiff for engaging in protected whistleblowing activity. These allegations are more than sufficient to state a claim under NPCL § 715-b, and Defendants' motion to dismiss this claim should be denied.

## IV. DISMISSAL OF PLAINTIFF'S WAGE AND HOUR CLAIMS IS UNWARRANTED

Contrary to Defendants' position, the FAC clearly does "identify" an overtime violation under the FLSA. Plaintiff alleges that he was paid a "straight time base hourly rate of" $20.82, and worked approximately 41-45 hours per week. FAC 64-65. Plaintiff's "straight time base hourly rate" was $20.82, it follows that overtime should have been paid to Plaintiff at $31.23 (1.5x the straight time rate) for those hours worked in excess of 40.

The claim that Plaintiff need only be paid the "federal overtime wage" of $10.88 per hour

for overtime hours is nonsensical. Both the FLSA and NYLL require that overtime pay be at 1.5x the regular rate, not 1.5 x the federal minimum wage. Therefore, Defendants were required to pay Plaintiff at $31.23 per hour for overtime hours as noted above. As discussed below, they failed to do so and are therefore liable under both the FLSA and NYLL.

Plaintiff alleges that he was required to clock out at the scheduled shift end work off-the-clock 2-5 times per week, sometimes "for an hour or more", and that he was not paid at all for this time. Plaintiff further alleges that Defendants deducted 30 minutes from his compensation for a purported lunch break every day even though he was regularly required to work through lunch. FAC. ¶¶ 71-77.

This is a viable FLSA overtime claim – the FAC alleges "40 hours of work  in a given workweek as well as some uncompensated time in excess of the 40 hours….Nothing more is required." *Herrera v. Comme Des Garcons, Ltd.*, 84 F.4th 110, 115 (2d Cir. 2023); *see also Isayeva v. Braces*, 2024 U.S. Dist. LEXIS 41769, at *19-20 (S.D.N.Y. Mar. 11, 2024) (plaintiff "plausibly alleged that she worked uncompensated time in excess of 40 hours each week, given her recitation of both the specific time periods worked and the specific practices responsible for those overages."); *Brain v. The Execu-Search Grp., LLC*, No. 22 Civ. 8219 (MKV), 2024 U.S. Dist. LEXIS 34420, 2024 WL 838085, at *4 (S.D.N.Y. Feb. 28, 2024). Notably, the Defendants' Motion fails to consider Herrera despite its binding effect. Under the standard set forth by *Herrera*, Plaintiff's FLSA and NYLL claims are properly plead.

Defendants' disingenuous assertion that FLSA minimum wage violations are not plead is irrelevant because Plaintiff is not asserting a FLSA minimum wage claim, individually or for a collective action.

The "Residency Agreement" should not be considered at this stage. It is not incorporated

by reference, nor integral to the FAC. The "Residency Agreement" proffered by Defendants does not speak to overtime (the stipend is further confirmation that overtime was not paid and does not change the fact that Defendants are required to pay overtime under the FLSA. *See Zubair v. Entech Eng'g P.C.*, 715 F. Supp. 2d 541, 541 (S.D.N.Y. 2010) ("As a general rule, the FLSA overtime provisions are applicable "even though there may be a custom, contract, or agreement not to pay for the time so spent.").

Moreover, given Defendants' reliance on the "Residency Agreement", failure to provide notices and statements as required under NYLL 195.1 and 195.3 caused Plaintiff actual harm. Plaintiff's paystubs, also issued by Defendants, reflect an hourly rate of pay. Plaintiff's NYLL 191 claims must also survive as Plaintiff adequately alleges performance of manual labor in the FAC.

Dated: August 4, 2025    Respectfully submitted,
Huntington, New York

By: _____
**TA LEGAL GROUP PLLC**
Taimur Alamgir, Esq. (TA 9007)
205 East Main Street, Suite-3-2
Huntington, NY 11743
Tel.: (914) 552-2669
tim@talegalgroup.com