UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RUSSELL DAVENPORT,

Plaintiff,

- against -

EPISCOPAL HEALTH SERVICES, INC.,
ST. JOHN'S EPISCOPAL HOSPITAL
SOUTH SHORE, and ASNEL VALCIN,

Defendant,

Case No.: 1:24-cv-08821

**DECLARATION OF
RUSSELL DAVENPORT**

I, RUSSELL DAVENPORT, under penalty of perjury, affirm as follows:

1.      I am the Plaintiff in the above-referenced matter.

2.      I have personal knowledge of the matters contained in this declaration, and if called upon, I could and would testify to each of the statements made herein. I submit this declaration in support of my Motion for Conditional Collective Certification pursuant to the Fair Labor Standards Act ("FLSA").

3.      I was employed by the Defendants Episcopal Health Services, Inc., and St. John's Episcopal Hospital South Shore, and Asnel Valcin (collectively, "Defendants"), as a Chaplain Resident in Defendants' Clinical Pastor Education Program (CPE), which is located at St. John's Episcopal Hospital South Shore. from approximately February 2022, until my unlawful termination in May 2023.

4.      Throughout my employment with Defendants, Defendants scheduled my shifts to be 8 hours per day, 5 days per week. My scheduled shifts included, but were not limited to, [6:00 AM to 2:00 PM], [7:00 AM to 3:00 PM], and [8:00 AM to 4:00 PM]. However, as discussed

below, I was frequently required to work additional hours beyond my scheduled shifts. As such, I regularly worked 8-10 hours per day, 5 days per week, for a total of approximately 41-45 hours per week.

5.    Throughout my employment with Defendants, I was compensated at a base hourly rate of $20.82 and was paid on a bi-weekly basis.

6.    Based on my observations and conversations with other Chaplain Residents and Supervisors-In-Training, all such employees of Defendants were similarly paid on an hourly basis, similarly worked in excess of 40 hours on a regular basis, and were similarly paid on a bi-weekly basis.

7.    Defendants required me to clock out at the scheduled end of each shift and continue working, sometimes for an hour or more, past the scheduled end of my shift. I was directed to clock out at the end of a scheduled shift, but required to continue performing work.

8.    Specifically, after going off the clock, I was required to continue counseling patients, families, and staffers (particularly in emotional situations, such as learning that a loved one was not going make it, where it was consequently difficult and harmful to the bereaved for a different Chaplain or Supervisor-in-Training to take over).

9.    Additionally, I was required to complete "charting," and handle other pastoral responsibilities off-the-clock without compensation.

10.    I was required by Defendants to perform the foregoing off-the-clock post-shift work approximately 2-5 times per workweek on average.  However, I was never paid wages or (for hours exceeding 40) overtime for working those additional post-shift off-the-clock hours.

11.    Based on my observations and conversations during my employment, all Chaplain Residents and Supervisors-in-Training were, like me, regularly required by Defendants to clock

out at the end of their scheduled shifts and continue working off-the-clock, but were not compensated for the additional, post-shift, off-the-clock hours, including overtime hours.

12. I discussed this policy with numerous co-workers including, but not limited to Timothy Taylor, Ruth Mathew, Keith [LNU], Kevin Bedard, Rickie Parks, and Melvin Reed, each of whom confirmed that they, like me, were required to clock out at the end of their scheduled shifts and continue working off-the-clock without compensation on a regular basis.

13. Timothy Taylor, Ruth Mathew, Keith [LNU], Kevin Bedard, Rickie Parks, and Melvin Reed and I (in addition to other Chaplain Residents and Supervisors-In-Training) routinely complained to one another regarding Defendants' unlawful policy of requiring us to clock out and continue working without compensation. We would discuss having to perform this unpaid post shift work in the hospital hallways and in the offices we worked out of, and when "charting."

14. Ruth Mathew and Keith [LNU] frequently mentioned to me that they were required to perform counseling duties after clocking out at the end of their shifts.

15. Defendant Valcin, the Director of the CPE program, openly mandated that I and all other Chaplain Residents and Supervisors-In-Training were required to clock out at the end of their scheduled shift no matter what, and continue to finish their work off the clock without compensation. In this regard, Director Valcin openly and repeatedly told us that **"If you can't finish your work in your shift, you have to clock out and then finish your work."**

16. Director Valcin would reprimand us, in sum and substance, that if we wished to be paid for all of our working hours, we should get our work done faster.

17. On a few occasions, I clocked out after the scheduled shift end to accurately reflect my hours worked. However, on such occasions, Defendants manually altered my time records of those to reflect a clock-out time corresponding to the scheduled shift conclusion. This

manipulation of time records resulted in the underreporting of my actual hours worked and the reduction of my pay.

18.     Director Valcin openly stated to me that he would cut my time if I did not clock out at the scheduled end of my shift.

19.     Based on my observations and conversations with other Chaplain Residents and Residential Supervisors, all such employees of Defendants were subject to this policy of manually altering time records.

20.     Timothy Taylor confirmed to me that, like me, his time was manually altered to reflect a clock-out time corresponding to the scheduled shift conclusion.

21.     Additionally, Defendants deducted 30 minutes from my compensable time each day for a purported lunch break, despite being required to remain on call and perform work duties, I was directed by Defendants to perform counseling and pastoral duties during these purported lunch breaks and, on such days, which occurred approximately twice per week, was not permitted to have a free and clear break for lunch. Due to this break policy I was deprived of regular and overtime pay.

22.     Based on my observations and conversations with co-workers, other Chaplain Residents and Supervisors-In-Training, including, but not limited to Timothy Taylor, Ruth Mathew, Keith [LNU], Kevin Bedard, Rickie Parks, and Melvin Reed, were similarly subject to this policy of deducting 30 minutes for a break, even though they, like me, were required to work through their shifts approximately twice per week and, on those days, received no free and clear break. Like me, the aforesaid co-workers were deprived of regular and overtime pay as a result of this common break policy.

23.     During my employment, I observed Timothy Taylor, Ruth Mathew, Keith [LNU], Kevin Bedard, Rickie Parks, and Melvin Reed having to work through their shifts without receiving a proper break, even though a 30 minute break was deducted from our pay.

24.     Timothy Taylor and I would frequently complain to one another about being required to work continuously through our shifts when necessary, despite the deduction from our pay for a break.

25.     I agree to act as a class representative and am of sound mind and body.

26.     I do not have any conflicts with prospective class members.


[SIGNATURE PAGE FOLLOWS]

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  April 13, 2025

By:     /s/ Russell Davenport

RUSSELL DAVENPORT