RUSSELL DAVENPORT
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RUSSELL DAVENPORT,

                Plaintiff,

    v.

EPISCOPAL HEALTH SERVICES, INC., ST. JOHN'S EPISCOPAL HOSPITAL SOUTH SHORE, AND ASNEL VALCIN,

                Defendants.

Civil Action No.: 1:24-cv-08821 (RPK) (LB)

## SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

**BOND, SCHOENECK & KING, PLLC**
Rebecca K. Kimura, Esq.
Mary Ellen Donnelly, Esq.
Sabrina Salama, Esq.
*Attorneys for Defendants*
600 Third Avenue, 22nd Floor
New York, New York 10016
(646) 253-2300
rkimura@bsk.com
mdonnelly@bsk.com
ssalama@bsk.com

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 2

POINT I ....................................................................................................................................... 2

    THE MINISTERIAL EXCEPTION BARS PLAINTIFF'S DISCRIMINATION CLAIMS .... 2

POINT II ..................................................................................................................................... 8

    THE MINISTERIAL EXCEPTION EXTENDS TO THE REMAINING CLAIMS ................. 8

CONCLUSION ......................................................................................................................... 11

CERTIFICATION ................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brandenburg v. Greek Orthodox Archdiocese of N. Am.*,
   2021 U.S. Dist. LEXIS 102800 (S.D.N.Y. June 1, 2021) ......................................................... 10

*Dole v. Shenandoah Baptist Church*,
   889 F.2d 1389 (4th Cir. 1990) ................................................................................................... 9

*Fratello v. Archdiocese of N.Y.*,
   863 F.3d 190 (2d Cir. 2017) .................................................................................................. 2, 3

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
   565 U.S. 171 (2012) .............................................................................................................. 2, 3

*Koenke v. St. Joseph's Univ.*,
   2021 U.S. Dist. LEXIS 3576 (E.D.P.A. Jan. 8, 2021) ............................................................... 8

*Martin v. SS Columba-Brigid Catholic Church*,
   2022 U.S. Dist. LEXIS 144616 (W.D.N.Y. Aug. 11, 2022) ...................................................... 8

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
   591 U.S. 732 (2020) ................................................................................................................... 8

*Patsakis v. Greek Orthodox Archdiocese of Am.*,
   339 F. Supp. 2d 679 (W.D.P.A. 2004) ...................................................................................... 9

*Penn v. New York Methodist Hospital*,
   884 F.3d 416 (2d Cir. 2018) ............................................................................................ 1, 3, 4, 5, 6, 7

*Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*,
   363 F.3d 299 (4th Cir. 2004) ..................................................................................................... 9

*Shukla v. Sharma*,
   2009 U.S. Dist. LEXIS 90044, at *19-20 (E.D.N.Y. Aug. 14, 2009) ........................................ 9

**Other Authorities**

12 N.Y.C.R.R. § 142-3.12(c)(8) ..................................................................................................... 10

NYLL § 651 .................................................................................................................................... 10

NYLL § 651(5)(f) ........................................................................................................................... 10

# **PRELIMINARY STATEMENT**

Defendants St. John's Episcopal Hospital (the "Hospital"), Episcopal Health Services Inc. ("EHS"), and Asnel Valcin ("Valcin") (collectively, "Defendants") respectfully submit this supplemental memorandum of law in further support of their motion to dismiss the First Amended Class and Collective Action Complaint of Plaintiff Russell Davenport ("Plaintiff"), dated May 7, 2025 (the "FAC"), pursuant to the Court's November 13, 2025 Order ("Order"). Specifically, the Court requested further briefing on the following questions: (1) "Does the ministerial exception, which 'precludes application of [employment discrimination laws] to claims concerning the employment relationship between a religious institution and its ministers,' reach Plaintiff's employment-discrimination claims as a member of a clinical pastoral education center in a hospital within the Episcopal Diocese of Long Island?," and in particular, addressing the applicability of *Penn v. New York Methodist Hospital*, 884 F.3d 416, 425 (2d Cir. 2018), "which extended the exception to employment-discrimination claims filed by a chaplain trainee at the New York Methodist Hospital, because its Department of Pastoral Care 'retained a critical aspect of [the hospital's] religious identity in order to provide religious services to its patients,' even though the hospital generally 'ha[d] shed significant aspects of' that identity;'" and (2) "whether the ministerial exception extends to Plaintiff's Title IX, FLSA, NYCHRL, NYSHRL, NYLL, and Not-for-Profit Corporation Law claims."

As set forth in detail below, each of the questions posed by the Court can be answered in the affirmative. The Second Circuit's decision in *Penn v. New York Methodist Hospital*, *supra*, provides controlling authority in support of applying the ministerial exception to Plaintiff, a resident chaplain providing religious services in a hospital which maintains an aspect of its religious identity, to dismiss all of Plaintiff's discrimination, retaliation, and harassment claims

1

stemming from such employment, including claims under the NYSHRL and the NYCHRL. The ministerial exception further bars all of Plaintiff's remaining claims, including those under Title IX, the FLSA, the NYLL, and the NPCL. For these reasons, Defendants' motion to dismiss should be granted in its entirety.

## ARGUMENT

### POINT I

### THE MINISTERIAL EXCEPTION BARS PLAINTIFF'S DISCRIMINATION CLAIMS

The ministerial exception is a legal doctrine derived from the First Amendment's Free Exercise and Establishment Clauses. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 183 (2012). The purpose of the ministerial exception is to "ensure[] that the authority to select and control who will minister to the faithful—a matter 'strictly ecclesiastical,' . . . is the church's alone." *Id.* at 195 (citations omitted). In *Hosanna-Tabor*, the Supreme Court explained that "[s]ince the passage of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., and other employment discrimination laws, the Courts of Appeals have uniformly recognized the existence of a 'ministerial exception,' grounded in the First Amendment, that precludes application of such legislation to claims concerning the employment relationship between a religious institution and its ministers." *Id.* at 188. Recognizing the existence of the ministerial exception, the Supreme Court then held that "the ministerial exception bars an employment discrimination suit brought on behalf of a minister, challenging her church's decision to fire her." *Id.* at 188, 196; *see also Fratello v. Archdiocese of N.Y.*, 863 F.3d 190, 198 (2d Cir. 2017) ("The ministerial exception bars employment-discrimination claims brought by ministers against the religious groups that employ or formerly employed them."). Accordingly, the ministerial exception "operates as an affirmative defense to an otherwise cognizable claim."

2

*Hosanna-Tabor*, 565 U.S. at 195 n.4. In other words, "the First Amendment does not tolerate a judicial remedy for any minister claiming employment discrimination against his or her religious group, regardless of the group's asserted reason (if any) for the adverse employment action." *Fratello*, 863 F.3d at 204.

Moreover, the ministerial exception is not limited to the head of a religious organization. *Hosanna-Tabor*, 565 U.S. at 190. There is also no "rigid formula" for deciding when the ministerial exception applies, but rather courts look at all the circumstances of the employment. *Id.* at 190. In *Hosanna-Tabor*, in finding that the ministerial exception applied to the plaintiff's employment as a "called teacher," the Supreme Court considered the formal title given to the plaintiff, the substance reflected in that title, the fact that plaintiff held herself out as a minister, and the important religious functions she performed. *Id.* at 192.

Since the Supreme Court's decision in *Hosanna-Tabor*, the Second Circuit has further recognized that "[i]t is the relationship between the activities the employee performs for her employer, and the religious activities the employer espouses and practices, that determines" whether the exception applies. *Penn v. N.Y. Methodist Hosp.*, 884 F.3d 416, 423 (2d Cir. 2018) (quoting *Fratello*, 863 F.3d at 205); *see also Fratello*, 863 F.3d at 205 ("Where, as here, the four considerations are relevant in a particular case, 'courts should focus' primarily 'on the function[s] performed by persons who word for religious bodies.'").

In *Penn v. N.Y. Methodist Hosp.*, *supra*, the plaintiff brought claims of, *inter alia*, race and religious discrimination and retaliation under Title VII, the NYSHRL, and the NYCHRL. *See* 884 F.3d at 422. In *Penn*, the Second Circuit decided the exact issue present in the instant action, namely, whether the ministerial exception bars the employment discrimination claims raised by a chaplain resident enrolled in a clinical pastoral education program in a hospital with a religious

3

origin. *Id.* at 418. In answering this question in the affirmative, the Second Circuit analyzed facts analogous to those set forth in the FAC and otherwise publicly available to the parties in this action.

First, the defendant employer in *Penn*, New York Methodist Hospital ("NYMH"), was originally affiliated with a religious organization. The United Methodist Church established NYMH in 1881 at the "behest" of a Methodist minister and with financing from a Methodist philanthropist. *Penn*, 884 F.3d at 418. However, in 1975, NYMH distanced itself from its religious origins, removing all reference to its "Church related character" and "relationship with The United Methodist Church" from its Certificate of Incorporation, and otherwise referring to itself as a "secular institution." *Id.* at 418-19. Nevertheless, vestiges of NYMH's religious heritage remained: (i) NYMH has kept "Methodist" in its name, despite organizational and operational changes; (ii) NYMH has a twenty-four hour service provided by the pastoral care department; (iii) the United Methodist Association Journal wrote an article observing that the hospital's methodist influence can still be seen in the hospital; (iv) NYMH has a memorial plaque commemorating its "status as the first Methodist hospital in the world"; and (v) NYMH's current Employee Handbook emphasized its religious history and states that its mission is "to provide an active ecumenical program of pastoral care and conduct[] a clinical pastoral program." *Id.* at 419.

Similarly, here, Defendant Hospital was formed in 1905, after a concerned committee of local residents appealed to the Roman Catholic Bishop of Brooklyn, the Right Reverend Charles E. McDonnell. Bishop McDonnell turned to the Sisters of St. Joseph, who opened the Hospital on June 25, 1905.[1] Later, in 1976, with the leadership and vision of the Right Reverend Jonathan G. Sherman V. Bishop of Long Island, the Church Charities Foundation, forerunner of EHS, assumed stewardship of the facility, renaming it to St. John's Episcopal Hospital, and restoring the original

---

[1] *History*, EHS, https://ehs.org/about/history/ (las visited Nov. 24, 2025).

4

sense of mission and direction.[2] This leadership continued through 1982 under the Right Reverend Robert C. Witcher, VI, Bishop of Long Island.[3] EHS then took the reins in 1987.[4] Similar to the hospital in *Penn*, the Hospital and EHS have "Episcopal" in their respective names, demonstrating its continued association with its religious past. EHS' mission statement also echoes this sentiment by seeking to "deliver quality, value based services with cultural sensitivity to the faiths and traditions of those [it] serve[s]."[5] As recently as July 2023, the street outside the main hospital building was renamed "St. John's Episcopal Hospital Way," commemorating the fact that "[f]or almost 120 years, the religious communities have provided care for the people of Far Rockaway from this location."[6] Just as in *Penn*, EHS and the Hospital have a long, intertwined history with its religious roots, and this history continues to be honored today.

Second, *Penn* involved conduct within the NYMH's Department of Pastoral Care (the "NYMH's Pastoral Department"). *Penn*, 884 F.3d at 419-20. The hospital's Pastoral Department's mission is to provide an "ecumenical program of pastoral care" to patients and to "see that the needs of the whole person—mind and spirit as well as body—are met." *Id.* A chaplain in the department is required to (i) minister to patients, their families, and staff; (ii) facilitate the patient's receiving of rituals and practices of his/her own faith when requested; (iii) counsel patients and families who struggle with how their faith influence the way they deal with hospitalization; (iv) counsel patients, families, and staff as they deal with grief and loss; (v) offer prayer, ritual, devotional materials to patients and services; and (vi) participate in coordinating and conducting

---

[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *About*, EHS, https://ehs.org/about/mission-vision/ (last visited Nov. 24, 2025).
[6] *See* Hernesto Galdamez, *St. John's Episcopal Hospital Renames Its Street*, LI Herald (Aug. 13, 2023), https://www.liherald.com/fivetowns/stories/st-johns-episcopal-street-rename,188527?.

5

chapel services. *Id.* at 420. The Second Circuit noted that "[w]hile NYMH may have shed significant aspects of its religious identity . . . the hospital's Department of Pastoral Care has retained a critical aspect of that religious identity to provide religious services to its patients. These services, while not limited to those who are Methodist, are indisputably religious." *Penn*, 884 F.3d at 425.

Moreover, the plaintiff in *Penn* was a resident chaplain at the hospital's Clinical Pastoral Education Residency Program. *Id.* at 421. In his role as chaplain resident, he was "primarily responsible for ministry." *Id.* As a chaplain resident, he was also responsible for coordinating the distribution of Bibles, performing religious rituals, organizing and conducting religious services, and maintaining active, ongoing pastoral care to staff. *Id.* at 421, 425. Based on the foregoing, the Second Circuit reaffirmed the lower court's holding that "the relationship between Plaintiff and NYMH (specifically, the Department of Pastoral Care) was that of a religious employee and a religious institution," because even though the plaintiff challenged whether the hospital had the "obvious religious characteristics" of a "religious group," the plaintiff "*does not and cannot dispute that he performed religious services for NYMH's Department of Pastoral Care and, thus, served the department's religious purpose.*" *Id.* at 426 (emphasis added).

Likewise, this litigation involves alleged activities within St. John's Episcopal Hospital's pastoral care department, through which the Hospital's chaplains "serve patients, their families, and Team Members at [the Hospital]."[7] Chaplains at the Hospital are required to (i) identify and address, the spiritual needs of patients, their families and Team Members; (ii) comfort the distressed, confused, and overwhelmed; (iii) help others acknowledge and process life issues that surface during health care challenges; (iv) defuse, debrief, and challenge Team Members; (v)

---

[7] *Pastoral Care*, EHS, https://ehs.org/patient-visitors/pastoral-care/ (last visited Nov. 24, 2025).

6

provide spiritual care, religious rites, and prayers; and (vi) conduct services on holy days.[8]

Identical to *Penn*, Plaintiff in the instant action was also a Chaplain Resident in the Hospital's Clinical Pastoral Training Program (the "Program"). According to EHS' website, the Program:

> is a professional training and education program for ministry. It brings theology students, ordained clergy, members of religious orders, and qualified laypersons into supervised encounters with hospital patients and nursing home residents. The program facilitates the development of pastoral identity, interpersonal competence, pastoral assessment skills, professional collaboration, group leadership, pastoral care and counseling, and pastoral theological reflection.[9]

Based on Plaintiff's own allegations in the FAC, Plaintiff confirms that "EHS maintains the Clinical Pastoral Education ("CPE") Center, a component of St. John's, *which offers pastoral services to patients and community members*." (FAC ¶ 56) (emphasis added). Moreover, in the FAC, Plaintiff confirms that his responsibilities as a chaplain resident included "traveling to meet patients, families and staff members to provide them spiritual and clinical counseling, praying with them . . . , conducting worship services and performing religious rites and rituals," including performing "last rights for dying patients." (FAC ¶ 79).

Based on the facts set forth above, the Second Circuit in *Penn* concluded that the ministerial exception applied to bar the plaintiff's claims for employment related claims, including discrimination and retaliation and, consequently, reaffirmed the lower court's order dismissing all of the plaintiff's claims.  As the facts in *Penn* are nearly *identical* to the facts in the instant action, the ministerial exception should likewise bar Plaintiff's discrimination, hostile work environment, and retaliation claims under the NYSHRL and the NYCHRL. Indeed, just as in *Penn*, Plaintiff

---

[8] *Id.*
[9] *Clinical Pastoral Education*, EHS, https://ehs.org/medical-education/clinical-pastoral-education/ (last visited Nov. 24, 2025).

does not and cannot dispute that he performed and provided religious services in his role as chaplain resident in the Program under the direction of EHS' pastoral care department and clinical pastoral education center, thereby serving the department's religious purpose. (FAC ¶¶ 56, 72, 79). *Penn* contains no distinction in its analysis which would require this Court to hold differently. For these reasons, Defendants' motion to dismiss should be granted with respect to Plaintiff's claims under the NYSHRL and NYCHRL.

POINT II

**THE MINISTERIAL EXCEPTION EXTENDS TO THE REMAINING CLAIMS**

As for the second question raised by this Court, whether the ministerial exception extends to all of Plaintiff's claims under Title IX, FLSA, NYCHRL, NYSHRL, NYLL, and Not-for-Profit Corporation Law claims, the ministerial exception bars not only the discrimination claims, but all of Plaintiff's remaining claims as well. Although the plaintiff in *Penn* only brought claims under Title VII, the NYSHRL, and the NYCHRL—all of which were dismissed under the ministerial exception—there is legal authority to support the ministerial exception as a bar to the remainder of Plaintiff's claims made under Title IX, the FLSA, the NYLL, and the NPCL.

First, the Supreme Court broadly held that the ministerial exception applies to "laws governing the *employment relationship* between a religious institution and [ministerial] employees" and, consequently, "courts are bound to stay out of *employment disputes* involving [ministerial employees]." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 736, 746 (2020) (emphasis added); *see also Martin v. SS Columba-Brigid Catholic Church*, 2022 U.S. Dist. LEXIS 144616, at *18 (W.D.N.Y. Aug. 11, 2022) (stating that "the ministerial exception applies to *all* employment discrimination claims" (emphasis added)). In *Koenke v. St. Joseph's Univ.*, 2021 U.S. Dist. LEXIS 3576, at *9 (E.D.P.A. Jan. 8, 2021), the court specifically held that

8

Title IX, as a federal statute governing employment relationships, falls within the scope of the ministerial exception. Accordingly, the ministerial exception applies to <u>all claims</u> involving the *employment relationship*, including Plaintiff's claims under Title IX, the NPCL, the FLSA, and the NYLL.

In addition, the ministerial exception has specifically been applied to overtime wage law violations, including claims under the FLSA and NYLL. The Fourth Circuit in *Dole v. Shenandoah Baptist Church*, 889 F.2d 1389, 1396 (4th Cir. 1990) recognized that there is a ministerial exception to the FLSA. The Fourth Circuit later held in *Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*, 363 F.3d 299, 310 (4th Cir. 2004), that a religiously affiliated entity is a "religious institution" for the purposes of the ministerial exception where the entity's mission is marked by clear or obvious religious characteristics. Accordingly, the court held that the ministerial exception barred FLSA claims asserted by the plaintiff—a kosher supervisor appointed by a board of Jewish rabbis for a Jewish nursing home, to guard against violations of Jewish dietary laws. *Id.* at 311; *see also Patsakis v. Greek Orthodox Archdiocese of Am.*, 339 F. Supp. 2d 679, 694 (W.D.P.A. 2004) ("Furthermore, this court is unaware of any case that has declined to apply the ministerial exception to other federal employment statutes such as the . . . [FLSA].").

In *Shukla v. Sharma*, 2009 U.S. Dist. LEXIS 90044, at *19-20 (E.D.N.Y. Aug. 14, 2009) (Pollack, M.J.) (Amon, J.), this Court cited to *Shaliebsabou* and *Patsakis* and reiterated the prevailing authority that "claims relating to overtime law violations under the FLSA *and state law* clearly fall within the ministerial exception." (emphasis added). This point was underscored by the court's citation to the Wage and Hour guidelines issued by the Department of Labor, which specifically provide that "[p]ersons such as nuns, monks, priests, lay brothers, ministers, deacons, and other members of religious orders who serve pursuant to their religious obligations in schools,

9

hospitals and other institutions operated by their church or religious order shall not be considered to be 'employees.'" *Id.* at *20. Based on this analysis, this Court dismissed plaintiff's FLSA and state labor law claims for lack of subject matter jurisdiction due to the fact the ministerial exception applied.[10]

More recently, in *Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, 2021 U.S. Dist. LEXIS 102800, at *2 (S.D.N.Y. June 1, 2021), the plaintiffs, sanctified nuns, brought claims against the defendant, the Archdiocese, for unpaid minimum wages and unpaid overtime wages under the NYLL. In evaluating these wage claims, the court specifically noted that the NYLL excludes from its definition of "employee" any individual who is "employed or permitted to work . . . as a member of a religious order, or as a duly ordained, commissioned or licensed minister, priest or rabbi." NYLL § 651(5)(f). The New York Department of Labor has interpreted the term "religious order" to mean "a group of people who are joined together under the authority of a religious leader, and are dedicated to the performance of religious works." 12 N.Y.C.R.R. § 142-3.12(c)(8). In light of these definitions, the court dismissed the plaintiff's NYLL claims because the plaintiffs were "permitted to work . . . as member[s] of a religious order," and therefore, were not considered "employees" under NYLL § 651. Accordingly, the ministerial exception operates to bar employment claims under the FLSA and NYLL.

For the reasons set forth above, the ministerial exception applies to bar all of Plaintiff's claims, and Defendants' motion to dismiss should be granted in its entirety.

---

[10] In subsequent case history, the court clarified that plaintiff's complaint included allegations that "defendants failed to pay minimum wage and overtime in violation of the [FLSA] and New York State wage and hour laws." *See Shukla v. Sharma*, 2009 U.S. Dist. LEXIS 91051, at *2 (E.D.N.Y. Sept. 29, 2009) (Amon, J.) (adopting the report and recommendation of Magistrate Judge Pollack).

**CONCLUSION**Error! Bookmark not defined.

Based on the foregoing and Defendants' prior briefs filed in support of their Motion to Dismiss, Defendants respectfully request that the Court grant their motion to dismiss the Plaintiff's First Amended Complaint, together with such other and further relief as the Court deems just and proper.

Dated: December 3, 2025                          BOND, SCHOENECK & KING, PLLC

By: _/s/ Rebecca K. Kimura_
Rebecca K. Kimura, Esq.
Mary Ellen Donnelly, Esq.
Sabrina Salama, Esq.
*Attorneys for Attorneys for Defendants*
600 Third Avenue, 22nd Floor
New York, New York 10016
rkimura@bsk.com
(646) 253-2300

11

**CERTIFICATION**

The undersigned, an attorney duly admitted to the bar of this Court, hereby certifies under the penalty of perjury that the foregoing Memorandum of Law contains 3,103 words (excluding the Cover Page, Table of Contents, and Table of Authorities), and complies with Rule 7.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, effective January 2, 2025.

*/s/ RKK*
Rebecca K. Kimura, Esq.
