## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

RUSSELL DAVENPORT,

            *Plaintiff*,

   - against -

EPISCOPAL HEALTH SERVICES, INC.,
ST. JOHN'S EPISCOPAL HOSPITAL
SOUTH SHORE, and ASNEL VALCIN,

            *Defendants*.

Case No.: 1:24-cv-8821 (RPK) (LB)

---

## SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

---

**TA LEGAL GROUP PLLC**
Taimur Alamgir, Esq.
205 East Main Street, Suite 3-2
Huntington, NY 11743
Tel.: (914) 552-2669
tim@talegalgroup.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... ii, iii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 3

I. THE MINISTERIAL EXCEPTION CANNOT BE DECIDED ON A MOTION TO DISMISS ........................................................................................................................ 3

II. DEFENDANTS ARE NOT A RELIGIOUS GROUP ON THE PLEADINGS; PENN IS DISTINGUISHABLE ................................................................................................. 5

III. PLAINTIFF IS NOT A "MINISTER" FOR PURPOSES OF THE EXCEPTION ................................................................................................................................... 7

IV. THE MINISTERIAL EXCEPTION DOES NOT BAR PLAINTIFF'S HOSTILE WORK ENVIRONMENT, SEXUAL HARASSMENT, RETALIATORY NON-RENEWAL, AND OTHER RETALIATION CLAIMS ...................................................... 9

V. THE MINISTERIAL EXCEPTION DOES NOT BAR PLAINTIFF'S TITLE IX CLAIM ……………………………………………………………………........ 11

VI. THE MINISTERIAL EXCEPTION DOES NOT BAR PLAINTIFF'S WAGE-AND-HOUR AND NEW YORK LABOR LAW CLAIMS ..................................................... 12

VII. ADDITIONAL CLAIMS (NPCL AND INDIVIDUAL LIABILITY) AND SCOPE OF RELIEF ………………………………………………………………….. 14

VIII. REQUEST FOR LEAVE TO AMEND AND FOR DISCOVERY OR CONVERSION TO SUMMARY JUDGMENT ............................................................. 15

CONCLUSION ........................................................................................................... 16

# TABLE OF AUTHORITIES

Bell v. Judge Mem'l Catholic High Sch., No. 2:20-cv-00829-RJS-JCB, 2023 U.S. Dist. LEXIS 90351 (D. Utah May 22, 2023) ............................................................... 11

Belya v. Kapral, 45 F.4th 621 (2d Cir. 2022) ................................................... 4

Boliak v. Reilly, 2025 NY Slip Op 07088 (App. Div.) ................................................... 11

Bondi v. Grant Thornton Int'l (In re Parmalat Sec. Litig.), 377 F. Supp. 2d 390 (S.D.N.Y. 2005) ............................................................... 4

Brandenburg v. Greek Orthodox Archdiocese of N. Am., No. 20-CV-3809 (JMF), 2023 U.S. Dist. LEXIS 30574 (S.D.N.Y. Feb. 23, 2023) ......................................................... 10

Califano v. Roman Cath. Diocese of Rockville Ctr., 751 F. Supp. 3d 42 (E.D.N.Y. 2024) ............................................................... 3, 4, 9

CompassCare v. Cuomo, 465 F. Supp. 3d 122 (N.D.N.Y. 2020) ..................................... 7

DeMarco v. Holy Cross High Sch., 4 F.3d 166 (2d Cir. 1993) ………………………...... 11

DeWeese-Boyd v. Gordon Coll., 487 Mass. 31 (2021) ................................................... 8

Dias v. Archdiocese of Cincinnati, No. 1:11-CV-00251, 2012 U.S. Dist. LEXIS 43240 (S.D. Ohio Mar. 29, 2012) ............................................................... 13

EEOC v. R.G., 884 F.3d 560 (6th Cir. 2018) ................................................... 6

Elvig v. Calvin Presbyterian Church, 375 F.3d 951 (9th Cir. 2004) ............................... 10

Fitzgerald v. Roncalli High Sch., Inc., No. 1:19-cv-04291-RLY-TAB, 2022 U.S. Dist. LEXIS 253511 (S.D. Ind. Mar. 30, 2022) ......................................................... 4

Fratello v. Archdiocese of N.Y., 863 F.3d 190 (2d Cir. 2017) ......................................... 7

Garrick v. Moody Bible Inst., 412 F. Supp. 3d 859 (N.D. Ill. 2019) ............................... 12

Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C., 565 U.S. 171 (2012) ............................................................... 4

Jusino v. Fed'n of Cath. Teachers, Inc., 54 F.4th 95 (2d Cir. 2022) ................................. 4

Lavy v. Am. Soc'y for Yad Vashem, No. CV 23-09038-MWF (PVCx), 2024 U.S. Dist. LEXIS 231095 (C.D. Cal. Dec. 19, 2024) ......................................................... 5

Lishu Yin v. Columbia Int'l Univ., No. 3:15-cv-03656-JMC, 2017 U.S. Dist. LEXIS 159629 (D.S.C. Sept. 28, 2017) ........................................................................................ 4

Little v. First Baptist Church, Crestwood, 475 U.S. 1148 (1986) ..................................... 9

McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc., 304 F. Supp. 3d 514 (N.D. Miss. 2018) ........................................................................................................... 9

Our Lady of Guadalupe Sch. v. Morrissey-Berru, 591 U.S. 732 (2020) .......................... 7

Penn v. New York Methodist Hosp., 884 F.3d 416 (2d Cir. 2018) ...................... 1, 3, 5, 7

Puri v. Khalsa, 844 F.3d 1152 (9th Cir. 2017) ................................................................ 14

Redhead v. Conference of Seventh-Day Adventists, 440 F. Supp. 2d 211 (E.D.N.Y. 2006) ........................................................................................................................................ 8

Rweyemamu v. Cote, 520 F.3d 198 (2d Cir. 2008) .......................................................... 9

Señal v. Lynch, No. 809730-2021E, 2022 N.Y. Misc. LEXIS 28511 (Sup. Ct. July 5, 2022) ............................................................................................................................... 9

Shaliehsabou v. Hebrew Home of Greater Wash., Inc., 363 F.3d 299 (4th Cir. 2004).... 13

Stolarik v. N.Y. Times Co., 323 F. Supp. 3d 523 (S.D.N.Y. 2018) ……….................... 3

Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290 (1985) .......................... 12

## **INTRODUCTION**

Plaintiff Russell Davenport ("Plaintiff"), by and through his counsel, TA Legal Group PLLC, respectfully submits this supplemental memorandum of law in opposition to the Motion to dismiss the First Amended Complaint ("FAC") filed by Defendants Episcopal Health Services, Inc. ("EHS"), St. John's Episcopal Hospital South Shore ("St. John's"), and Asnel Valcin ("Director Valcin") (collectively, "Defendants"). This brief addresses the two questions raised *sua sponte* by the Court concerning the potential applicability of the ministerial exception to Plaintiff's claims:

(1) *"Does the ministerial exception, which 'precludes application of [employment discrimination laws] to claims concerning the employment relationship between a religious institution and its ministers,' reach Plaintiff's employment-discrimination claims as a member of a clinical pastoral education center in a hospital within the Episcopal Diocese of Long Island?," and in particular, addressing the applicability of Penn v. New York Methodist Hospital, 884 F.3d 416, 425 (2d Cir. 2018), "which extended the exception to employment-discrimination claims filed by a chaplain trainee at the New York Methodist Hospital, because its Department of Pastoral Care 'retained a critical aspect of [the hospital's] religious identity in order to provide religious services to its patients,' even though the hospital generally 'ha[d] shed significant aspects of' that identity;'"*

(2) *"whether the ministerial exception extends to Plaintiff's Title IX, FLSA, NYCHRL, NYSHRL, NYLL, and Not- for-Profit Corporation Law claims."*

After failing to raise the ministerial exception as an affirmative defense in their initial motion papers, Defendants now seize upon the Court's order to argue for a sweeping dismissal of all claims. Defendants' reliance on the ministerial exception is legally dubious and predicated on

***First***, the ministerial exception is a fact-intensive affirmative defense that is premature to decide on a motion to dismiss, particularly where, as here, Defendants improperly rely on extrinsic evidence outside the pleadings.

***Second***, even if the Court were to consider the merits, the exception does not apply. Based on the allegations in the FAC, which must be taken as true, Defendants do not constitute a

1

"religious group" and Plaintiff's role as a Chaplain Resident involved substantially secular and clinical duties, not those of a "minister."

**Finally**, the exception does not provide a shield for the non-religious wrongs alleged here, including claims for sexual harassment, hostile work environment, and wage-and-hour violations under the FLSA and NYLL. For these reasons and those stated in Plaintiff's prior memorandum of law in opposition, the Motion should be denied. In the alternative, Plaintiff should be permitted leaver to further amend.

<u>**ARGUMENT**</u>

**I.    THE MINISTERIAL EXCEPTION CANNOT BE DECIDED ON A MOTION TO DISMISS**

The fact-intensive nature of the "ministerial exception" inquiry renders resolution on a motion to dismiss inappropriate. Significantly, the Second Circuit's decision in *Penn v. New York Methodist Hospital*, 884 F.3d 416 (2d Cir. 2018) reviewed a grant of summary judgment, not a motion to dismiss. A motion for summary judgment permits the court to consider a developed factual record.

Here, at the motion to dismiss stage, where no discovery has taken place, the Court's review is confined to the pleadings. Federal Rule of Civil Procedure 12(d) is clear: "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Stolarik v. New York Times Co.*, 323 F. Supp. 3d 523, 538 (S.D.N.Y. 2018). Here, the Court has not converted the motion to summary judgment.

Defendants ask this Court to ignore this fundamental distinction by improperly presenting materials outside the First Amended Complaint ("FAC") to support their factual assertions as to

the ministerial exception. Their submission is replete with references to extrinsic materials, none of which are alleged in or integral to the FAC or otherwise admissible:

- Historical information about EHS and St. John's, drawn from Defendants' own website and a local news article, to argue for the hospital's religious origins and character.
- Descriptions of the Pastoral Care department's mission and services, sourced directly from the EHS website.
- Details regarding the Clinical Pastoral Training Program, also taken from the EHS website.

Defendants do not request the Court take judicial notice of these self-serving, extra-pleading materials for the truth of the matters asserted, and have no good-faith basis to do so at this Rule 12(b)(6) stage. Precedent in this Circuit addressing the improper evidence in support of the  decline to consider such evidence. For example, in *Califano v. Roman Cath. Diocese of Rockville Ctr.*, 751 F. Supp. 3d 42, 49 (E.D.N.Y. 2024), the court refused to consider similar extrinsic materials submitted by a Defendant to support a motion to stay on church-autonomy grounds because, as here, it was submitted for the truth of the matters asserted. The district court in *Penn* itself similarly declined to take judicial notice of a historical document offered by the defendant hospital to prove its religious character. *Penn v. N.Y. Methodist Hosp.*, No. 11-cv-9137 (NSR), 2013 U.S. Dist. LEXIS 142109, at *26 (S.D.N.Y. Sep. 30, 2013).

It must be stressed that this is not a motion to dismiss for lack of subject matter jurisdiction, where extrinsic evidence might be more easily considered. The Supreme Court has been unequivocal that "the [ministerial] exception operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 195 n.4 (2012). The Second Circuit recently reinforced this, clarifying that the ministerial exception goes to "the absence of a valid . . . cause of action" and does not divest the court of subject-matter jurisdiction. *Jusino v. Fed'n of Cath. Teachers, Inc.*, 54 F.4th 95,

104 (2d Cir. 2022). As an affirmative defense, it is Defendants' burden to prove the ministerial exception. The question is simply not one suitable for determination on a motion to dismiss.

Consequently, courts have frequently held fact-bound inquiries required by the ministerial exception and the related church autonomy doctrine are best decided at the summary judgment stage after a record has been developed. *See, e.g.*, *Belya v. Kapral*, 45 F.4th 621, 633 (2d Cir. 2022) (finding a pre-discovery dismissal on church autonomy grounds "particularly inopportune"); *Califano*, 751 F. Supp. 3d at 54; *Fitzgerald v. Roncalli High Sch., Inc.*, No. 1:19-cv-04291-RLY-TAB, 2022 U.S. Dist. LEXIS 253511, at *10 (S.D. Ind. Mar. 30, 2022) (refusing to apply the exception at the motion to dismiss stage); *Lishu Yin v. Columbia Int'l Univ.*, Civil Action No. 3:15-cv-03656-JMC, 2017 U.S. Dist. LEXIS 159629, at *16 (D.S.C. Sep. 28, 2017) (noting the issue should be "decided by summary judgment, which allows for a more thorough record").

The Court should also decline to apply the ministerial exception on Defendants' Motion because of the unusual posture of the matter. Because the ministerial exception was raised *sua sponte* by the Court, as opposed to Defendants' motion, Plaintiff was not afforded an opportunity to amend his FAC to address this particular defense. This underscores why granting dismissal now would be premature. Defendants bear "the burden of persuasion that the plaintiff has not stated a claim," a burden they cannot meet by belatedly asserting a fact-intensive defense supported by evidence outside the pleadings. *Bondi v. Grant Thornton Int'l (In re Parmalat Sec. Litig.)*, 377 F. Supp. 2d 390, 415 n.166 (S.D.N.Y. 2005). Deciding this complex issue requires a factual record that does not yet exist. Accordingly, the Court should deny Defendants' motion.

## II.    DEFENDANTS ARE NOT A RELIGIOUS GROUP ON THE PLEADINGS; PENN IS DISTINGUISHABLE

Even if the Court were to consider the merits, Defendants have failed to establish that they are a "religious group" entitled to invoke the ministerial exception. The inquiry into whether the

exception applies is a "sliding scale, where the nature of the employer and the duties of the employee are both considered" *Penn v. N.Y. Methodist Hosp.*, 884 F.3d 416, 422 (2d Cir. 2018)]. Defendants' position glosses over the first, critical prong of this test—the nature of the employer— by treating *Penn* as dispositive merely because both cases involve hospitals with some connection to Christian denominations.

In *Penn*, the Second Circuit affirmed, based on a fully developed factual record, that the defendant hospital, "by its history and continuing purpose, through its Department of Pastoral Care, is a 'religious group'" for purposes of the ministerial exception. *Penn*, 884 F.3d at 424. However, the *Penn* court itself cautioned against over-extension of its holding, explicitly stating that it "does not and need not reach the issue of whether hospitals, secular in their origins and with chaplaincies, also could properly invoke the ministerial exception." *Penn*, 884 F.3d at 426. Here, the FAC alleges only that EHS is "a part of the Episcopal Diocese of Long Island" and operates St. John's hospital. FAC ¶ 54]. The FAC makes no allegations about the religious origins or continuing religious purpose of the hospital itself.

The facts here, as pleaded, are more analogous to cases where courts have found entities not to be religious groups. In *Lavy v. Am. Soc'y for Yad Vashem*, No. CV 23-09038-MWF (PVCx), 2024 U.S. Dist. LEXIS 231095, at *12 (C.D. Cal. Dec. 19, 2024), the court denied summary judgment, distinguishing *Penn* and finding a genuine dispute over the defendant's status as a religious group because it operated primarily as a fundraising organization. The court noted that the defendant had not offered evidence that its bylaws set forth a religious purpose, that it held itself out to the public as a religious organization, or that its employees were required to be of a particular religion. All three factors are present here; Defendants have offered no evidence, and none can be inferred from the FAC. The FAC shows that Defendants did not retain their religious

identity in same way that the hospital in Penn retained aspects of its Methodist roots. The FAC describes a program in which the Episcopal Church is not the faith of any Chaplain named therein, nor its Director, Valcin, and does not affect any aspect of the pastoral services it offers.

Similarly, in *EEOC v. R.G.*, 884 F.3d 560, 582 (6th Cir. 2018), the Sixth Circuit found a funeral home was not a religious institution because it had "virtually no 'religious characteristics.'" The funeral home was "not affiliated with any church; its articles of incorporation do not avow any religious purpose; its employees are not required to hold any particular religious views; and it employs and serves individuals of all religions." *Id*. Based on the FAC, EHS and St. John's – a for-profit teaching hospital – appear far more like the secular funeral home in *R.G.* than a religious institution.

Defendants offer a sophistic analysis of why this case is like *Penn*, relying on inadmissible and cherry-picked evidence. Notably, other evidence they submitted before the Court's request for supplement briefing undermines their position.

Significantly, the Training Agreement submitted by Defendants (Exhibit A to the Valcin Declaration, which accompanied Defendants' motion) states that it is between Plaintiff and "Episcopal Health Services Inc. ('EHS') which operates St. John's Episcopal Hospital and **St. John's Medical Services P.C.**". The inclusion of St. John's Medical Services P.C., a for-profit professional corporation, demonstrates that EHS's operations are intertwined with secular, for-profit commercial activity. The agreement itself is a standard employment document containing purely secular terms regarding compliance, compensation, and termination. Valcin Decl., Ex. A. Nothing in the agreement suggests that EHS is a "religious institution" beyond its name. At the very least, this presents a disputed factual question cannot be resolved on the barren record before the Court at the motion to dismiss stage.

### III.   PLAINTIFF IS NOT A "MINISTER" FOR PURPOSES OF THE EXCEPTION

Even if Defendants could establish they are a "religious group," the ministerial exception would not apply because, based on the allegations in the FAC and the agreement put forth by Defendants themselves, Plaintiff was not a "minister." The Supreme Court in *Hosanna-Tabor* expressly declined to "adopt a rigid formula for deciding when an employee qualifies as a minister" Instead, the Second Circuit looks to the "totality of the circumstances," guided by four considerations articulated in *Hosanna-Tabor*: "[1] the formal title given [to the employee], [2] the substance reflected in that title, [3] her own use of that title, and [4] the important religious functions she performed for the Church." *Fratello v. Archdiocese of N.Y.*, 863 F.3d 190, 203 (2d Cir. 2017). Ultimately, "[i]t is the relationship between the activities the employee performs for her employer, and the religious activities the employer espouses and practices, that determines" whether the exception applies." *CompassCare v. Cuomo*, 465 F. Supp. 3d 122, 163 (N.D.N.Y. 2020) (quoting *Penn*, 884 F.3d at 423).

Here, the substance of Plaintiff's role and the functions he performed were substantially secular, distinguishing this case from *Penn*. While Plaintiff's title was "Chaplain Resident," the Supreme Court has ruled that simply giving an employee such a title is not enough to justify the exception. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 752 (2020).

In applying the ministerial exception, *Penn* found the plaintiff's role to be providing "**religious care only**," *Penn*, 884 F.3d at 424. By contrast, Plaintiff Davenport's duties were a hybrid of secular and religious tasks (the latter of which he performed as a trainee).  The FAC alleges his duties included providing "spiritual and **clinical** counseling." Per the FAC, he was also required to perform numerous non-religious functions, including "opening the 'relaxation room'

for employees, counseling employees that experienced traumatic situations, counseling and assessing patients, and 'charting'" FAC, ¶ 72.

Plaintiff does not allege performance of tasks **overtly and indisputably** religious tasks performed for the Episcopal Church (*i.e.*, distributing Bibles or performing Easter communion like the plaintiff in *Penn)*. The FAC does does not allege any tasks specifically for the Episcopal denomination, or even Christianity exclusively. Notwithstanding his title, Plaintiff's role did not entail any faith-specific functions performed on behalf of the Episcopal Church and more closely resembled that of a social worker or clinical therapist in a secular training program that the role of the plaintiff in *Penn*, which involved performance of tasks specific to the Methodist Church.

That Plaintiff had some "religious responsibilities" does not automatically make him a minister subject to the exception. *See Trotter v. United Lutheran Seminary*, No. 20-570, 2021 U.S. Dist. LEXIS 142222, at *12 (E.D. Pa. July 29, 2021). The Training Agreement fails to outline any religious responsibilities. Plaintiff was not required to be an Episcopalian. The Training Agreement further states that Plaintiff, as a Trainee, would be responsible to secular corporate officers, including the Chief Executive Officer ("CEO"). Valcin Decl., Ex. A. This secular reporting structure further distinguishes Plaintiff's role from that of a traditional minister.

Courts have consistently declined to apply the exception to employees under similar circumstances. *See DeWeese-Boyd v. Gordon Coll.*, 487 Mass. 31, 163 N.E.3d 1000, 1017 (Mass. 2021) (declining to apply exception to social work professor who did not "pray with her students, participate in or lead religious services"); *Redhead v. Conference of Seventh-Day Adventists*, 440 F. Supp. 2d 211, 221 (E.D.N.Y. 2006) (no exception for teacher whose duties were mostly secular despite teaching Bible study every day); *Señal v. Lynch*, No. 809730-2021E, 2022 N.Y. Misc.

LEXIS 28511, at *15-16 (Sup. Ct. July 5, 2022). Like the plaintiffs in those cases, Plaintiff's duties were not ministeria.

Finally, Defendants have consistently characterized Plaintiff as a student subject to a "Clinical Education/Training Agreement." The ministerial exception applies to employment relationships, not other types of arrangements. *See McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 304 F. Supp. 3d 514, 525 (N.D. Miss. 2018). Having established an employment relationship, Defendants cannot now escape the obligations that come with it by selectively invoking an affirmative defense that is unsupported by the pleaded facts. At a minimum, whether Plaintiff's functions were "ministerial" is a "fact-specific issue" that is "inappropriate for resolution on a motion to dismiss." *Califano v. Roman Cath. Diocese of Rockville Ctr.*, 751 F. Supp. 3d 42, 53 (E.D.N.Y. 2024).

## IV.    THE MINISTERIAL EXCEPTION DOES NOT BAR PLAINTIFF'S (HOSTILE WORK ENVIRONMENT, SEXUAL HARASSMENT, RETALIATORY NON-RENEWAL OF HIS TRAINING AGREEMENT, AND OTHER RETALIATION)

Defendants overstate the reach of the ministerial exception, treating it as a license for religious employers to commit any manner of secular wrong. The Supreme Court has long recognized that "[b]ecause religious organizations may own property and enter into contracts, it is inevitable that they will become involved in legal disputes." *Little v. First Baptist Church, Crestwood*, 475 U.S. 1148, 1149 (1986). Second Circuit precedent likewise holds that a "plaintiff alleging particular wrongs by the church that are wholly non-religious in character is surely not forbidden his day in court." *Rweyemamu v. Cote*, 520 F.3d 198, 208 (2d Cir. 2008). Plaintiff's claims for sexual harassment, gender discrimination hostile work environment, and retaliation claims under the NYSHRL and NYCHRL fall squarely into this category of secular wrongs.

Neither the Supreme Court nor the Second Circuit has held that the ministerial exception bars hostile work environment claims that do not involve tangible employment actions, and the court in *Penn* did not decide this issue. However, the Ninth Circuit has reasoned that the exception does not apply to hostile work environment claims to the extent they do not involve tangible employment actions, as there is no First Amendment reason to shield a religious institution from its "obligation to protect its employees from harassment when extending such protection would not contravene the Church's doctrinal prerogatives." *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 953 (9th Cir. 2004).

Adjudicating Plaintiff's sexual harassment, gender discrimination, hostile work environment, and retaliation claims will not result in religious entanglement. In *Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, No. 20-CV-3809 (JMF), 2023 U.S. Dist. LEXIS 30574, at *35-36 (S.D.N.Y. Feb. 23, 2023), a case involving sexual harassment and retaliation claims brought against the Greek Orthodox Archdiocese by nuns claiming misconduct by a senior clergyman, the court rejected application of the ministerial exception, reasoning that

> So long as the inquiry "focuses upon factual questions such as whether the asserted reason for the challenged action comports with the defendant's policies and rules, whether the rule applied to the plaintiff has been applied uniformly, and whether the putative non-discriminatory purpose was stated only after the allegation of discrimination," the court continued, the First Amendment poses no obstacle.

Similar to *Brandenburg*, the Court and jury here must decide whether Plaintiff was subjected to a workplace "permeated with discriminatory intimidation, ridicule, and insult," based on factual allegations of a coworker's unwanted sexual advances, propositions, inappropriate touching, sharing of sexualized images, and the response by Defendants thereto. FAC, ¶¶ 104-115. These are secular factual questions, not ecclesiastical ones. Similarly, the ministerial exception does not bar claims of retaliation or discriminatory non-renewal where the court can focus on

pretext without questioning religious teaching. Here, the core factual issue is whether Defendants terminated Plaintiff's residency and refused to renew his Training Agreement because of his protected complaints about sexual harassment and discrimination, as the FAC alleges, or for a legitimate, non-retaliatory reason. FAC, ¶¶ 161-165, 170-171. This dispute can be decided without passing judgment on religious doctrine. *See, e.g., DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 172 (2d Cir. 1993) (in rejecting ministerial exception because "we are confident that the able district judge will be able to focus the trial upon whether DeMarco was fired because of his age or because of failure to perform religious duties, and that this can be done without putting into issue the validity or truthfulness of Catholic religious teaching."); *Boliak v. Reilly*, 2025 NY Slip Op 07088, ¶ 1 (App. Div.) ("the ministerial exception should not be extended to apply to conduct such as unlawful harassment simply because such conduct is perpetrated by a religious employer."); *Bell v. Judge Mem'l Catholic High Sch.*, No. 2:20-cv-00829-RJS-JCB, 2023 U.S. Dist. LEXIS 90351, at *32 (D. Utah May 22, 2023) (refusing to extend ministerial exception to non-renewal).

## V.    THE MINISTERIAL EXCEPTION DOES NOT BAR PLAINTIFF'S TITLE IX CLAIM

For the same reasons that dismissal of Plaintiff's other discrimination claims is improper, applying the ministerial exception to his Title IX claim at this preliminary stage would be premature. The FAC squarely alleges that Defendants EHS and St. John's are educational institutions that receive such federal funding and are thus subject to Title IX's requirements. FAC, ¶ 30.

Defendants' argument for dismissal hinges on a determination that Plaintiff is a "minister" and Defendants are a "religious group." As established in Points I, II, and III, *supra*, these are intensely factual questions that cannot be resolved on a motion to dismiss based on an undeveloped record.

Courts have recognized the impropriety of dismissing Title IX claims on ministerial exception grounds before the facts are developed. In *Garrick v. Moody Bible Inst.*, 412 F. Supp. 3d 859, 871 (N.D. Ill. 2019), for instance, the court denied a motion to dismiss Title IX claims, finding that further factual development was needed to determine if the plaintiff was a minister. Defendants cite a single case, *Koenke v. St. Joseph's Univ.*, for the proposition that the ministerial exception *can* apply to Title IX claims. The analysis in *Koenke* assumed the plaintiff was a minister. This case is distinguishable because Plaintiff's status as a minister and Defendants' status as a religious institution are the central, disputed issues.

## VI.    THE MINISTERIAL EXCEPTION DOES NOT BAR PLAINTIFF'S WAGE-AND-HOUR AND NYLL CLAIMS

Defendants' attempt to extend the ministerial exception to Plaintiff's wage-and-hour claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") is unsupported by precedent and relies on a distortion of the cases they cite. In this regard, the Supreme Court has held that the commercial activities of religious organizations are not beyond the reach of the FLSA. In *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 305-06 (1985), the Supreme Court ruled that "associates" of a religious foundation who worked in its commercial businesses were "employees" entitled to the FLSA's full protections because they worked in contemplation of compensation. That case remains good law and governs here. See *Streater v. Amazon*, No. 2:23-cv-02120-RFB-NJK, 2024 U.S. Dist. LEXIS 37100, at *5 n.4 (D. Nev. Feb. 29, 2024) ("It does not appear at first blush that religious institutions are exempt from the wage and hour provisions of the FLSA.

Plaintiff's claims for unpaid overtime and minimum wages are based on his status as a compensated employee, not on any religious function. FAC ¶¶ 64-84]. This is strongly confirmed by the contract that Defendants themselves have sought to interpose with respect to those very

claims, which says nothing about religion and is co-signed by St. John's Medical Services, P.C., a secular professional corporation.

Defendants egregiously misrepresent the cases they cite in support of their position. For example, the court in *Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, No. 20-CV-3809 (JMF), 2021 U.S. Dist. LEXIS 102800, at *24 (S.D.N.Y. June 1, 2021), did not apply the constitutional ministerial exception to the plaintiffs' NYLL claims. Instead, it dismissed them based on a narrow *statutory* exemption in NYLL § 651(5)(f) for individuals employed "as a member of a religious order, or as a duly ordained, commissioned or licensed minister, priest or rabbi." Plaintiff here is not a member of the Episcopal Church's religious order, or even Episcopal, nor was he employed as a licensed clergyman; to the contrary, he was a trainee in a clinical education program, FAC ¶ 57. Similarly, Defendants' reliance on *Shukla v. Sharma*, No. 07 CV 2972 (CBA), 2009 U.S. Dist. LEXIS 90044, at *21 (E.D.N.Y. Aug. 14, 2009), is misplaced, as it also concerned the statutory exemption for members of a religious order. These cases do not support the dismissal of Plaintiff's wage and hour claims pursuant to the ministerial exception.

*Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*, 363 F.3d 299, 307 (4th Cir. 2004), to which Defendants point, states that the ministerial "exception does not apply to the religious employees of secular employers or to the secular employees of religious employers." As argued above, Defendants have failed to establish they are a religious employer, and the FAC alleges Plaintiff's duties were substantially secular precluding application of the ministerial exception.

Courts have rejected efforts to apply the ministerial exception in the wage-and-hour context. *Dias v. Archdiocese of Cincinnati*, No. 1:11-CV-00251, 2012 U.S. Dist. LEXIS 43240, at *15 (S.D. Ohio Mar. 29, 2012), rightly denied a motion to dismiss FLSA claims, holding that the "sectarian nature of [a] school's educational activities does not, standing alone, make a teacher a

13

'minister' for purposes of exempting that person from the FLSA's definition of 'employee.'" Likewise in *Puri v. Khalsa*, 844 F.3d 1152, 1168 (9th Cir. 2017), where the plaintiffs sought, *inter alia*, lost compensation, the court ruled the ministerial exemption inapplicable, finding that "there is… no danger that, by allowing this suit to proceed, we will thrust the secular courts into the constitutionally untenable position of passing judgment on questions of religious faith or doctrine." *See also Dole v. Shenandoah Baptist Church*, 899 F.2d 1389, 1397 (4th Cir. 1990) (holding that "church-operated schools [are] covered by the Fair Labor Standards Act, and that their teachers and support staff are employees under the Act.") Contrary to Defendants' deceptive citation to cases outlining statutory requirements, the ministerial exception does not provide a shield against liability for failing to pay employees for their labor.

## VII.    ADDITIONAL CLAIMS (NPCL AND INDIVIDUAL LIABILITY) AND SCOPE OF RELIEF

Defendants' brief fails to account for claims that are plainly outside the ministerial exception's scope, namely the whistleblower claim under New York's Not-for-Profit Corporation Law ("NPCL") § 715-b and the claims for individual liability against Director Valcin.  The NPCL claim is inherently secular; it provides a cause of action for employees of large non-profits who are retaliated against for reporting conduct that they, in good faith, believe is illegal or violates company policy FAC, ¶¶ 206-208. Adjudicating this claim requires a factual inquiry into whether Plaintiff made a good-faith report and whether his termination was caused by that report—not an evaluation of religious doctrine.

Similarly, the ministerial exception does not automatically shield individual supervisors from liability for their own unlawful discriminatory and retaliatory acts. The FAC alleges that

Director Valcin personally exercised control over Plaintiff's employment, made the decision to terminate him minutes after a protected complaint, and aided and abetted the discrimination and retaliation in violation of the NYSHRL and NYCHRL FAC, ¶¶ 33, 164-165, 189. Holding Director Valcin accountable for his conduct as a manager does not impinge on EHS's constitutionally protected right to choose its ministers; rather, it enforces neutral, generally applicable laws against an individual alleged to have violated them.

## VIII.  REQUEST FOR LEAVE TO AMEND AND FOR DISCOVERY / CONVERSION TO SUMMARY JUDGMENT IF COURT WANTS FACTUAL RESOLUTION

Should this Court find any deficiency in the FAC, Plaintiff respectfully requests leave to amend his pleadings. Federal Rule of Civil Procedure 15(a)(2) directs that courts should "freely give leave when justice so requires." This liberal standard is particularly warranted here, where the ministerial exception defense was raised not by Defendants in their initial motion, but by the Court *sua sponte*, depriving Plaintiff of a meaningful opportunity to plead facts specifically tailored to this affirmative defense.

Furthermore, if the Court is inclined to resolve the fact-intensive questions raised by Defendants' ministerial exception argument, the proper course is not dismissal under Rule 12(b)(6). Instead, the motion should be converted to one for summary judgment under Rule 12(d), and Plaintiff should be afforded an opportunity to conduct discovery

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss in its entirety.

Dated:  Huntington, New York
        January 5, 2026

                                    **TA LEGAL GROUP PLLC**
                                    *Attorneys for Plaintiff*

By: _____
                                    Taimur Alamgir, Esq.
                                    205 East Main Street, Suite 3-2
                                    Huntington, NY 11743
                                    (914) 552-2669
                                    tim@talegalgroup.com

**CERTIFICATION**

The undersigned, an attorney duly admitted to the bar of this Court, hereby certifies under the penalty of perjury that the foregoing Memorandum of Law contains 4,668 words (excluding the Cover Page, Table of Contents, and Table of Authorities), and complies with Rule 7.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, effective January 5, 2025.

_____
Taimur Alamgir, Esq.