UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RUSSELL DAVENPORT,

                Plaintiff,

     v.

EPISCOPAL HEALTH SERVICES, INC., ST. JOHN'S EPISCOPAL HOSPITAL SOUTH SHORE, AND ASNEL VALCIN,

                Defendants.

Civil Action No.: 1:24-cv-08821 (RPK) (LB)

# REPLY SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

**BOND, SCHOENECK & KING, PLLC**
Rebecca K. Kimura, Esq.
Mary Ellen Donnelly, Esq.
Sabrina Salama, Esq.
*Attorneys for Defendants*
600 Third Avenue, 22nd Floor
New York, New York 10016
 (646) 253-2300
rkimura@bsk.com
mdonnelly@bsk.com
ssalama@bsk.com

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT .............................................................................................................................. 1

POINT I ....................................................................................................................................... 1

    THE APPLICATION OF THE MINISTERIAL EXCEPTION CAN BE DETERMINED ON A MOTION TO DISMISS ................................................................................................. 1

POINT II ..................................................................................................................................... 3

    PLAINTIFF FAILED TO MEANINGFULLY DISTINGUISH *PENN* ........................................... 3

POINT III .................................................................................................................................... 4

    THE FAC ESTABLISHES THAT PLAINTIFF IS A "MINISTER" FOR PURPOSES OF THE MINISTERIAL EXCEPTION ................................................................................. 4

POINT IV .................................................................................................................................... 5

    EACH OF PLAINTIFF'S CLAIMS ARE BARRED BY THE MINISTERIAL EXCEPTION ..... 5

POINT V ...................................................................................................................................... 6

    PLAINTIFF'S REQUEST FOR LEAVE TO AMEND AND FOR CONVERSION TO SUMMARY JUDGMENT SHOULD BE DENIED ................................................................ 6

CONCLUSION ........................................................................................................................... 7

CERTIFICATION ..................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brandenburg v. Greek Orthodox Archdiocese*, 2021 U.S. Dist. LEXIS 102800
(S.D.N.Y. June 1, 2021) .................................................................................................... 1

*Bymoen v. Herzog, Hein, Geduld, Inc.*,
1991 U.S. Dist. LEXIS 7169 (S.D.N.Y. May 24, 1991) ...................................................... 7

*Fratello v. Archdiocese of N.Y.*,
863 F.3d 190 (2d Cir. 2017) ............................................................................................... 6

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
565 U.S. 171 (2012) ............................................................................................................ 5

*Louis Feraud Int'l S.A.R.L. v. Viewfinder Inc.*,
406 F. Supp. 2d 274 (S.D.N.Y. 2005), *vacated and remanded on other grounds*,
489 F.3d 474 (2d Cir. 2007) ............................................................................................... 2

*Martin v. SS Columba-Brigid Catholic Church*,
2022 U.S. Dis. LEXIS 144616 (W.D.N.Y. Aug. 11, 2022) ................................................ 1

*Moreno v. Episcopal Diocese*,
2016 U.S. Dist. LEXIS 16543 (E.D.N.Y. Jan. 20, 2016) ................................................... 4

*Penn v. New York Methodist Hospital*,
884 F.3d 416 (2d Cir. 2018) ..................................................................................... 3, 4, 5, 6

*Rweyemamu v. Cote*,
520 F.3d 198 (2d Cir. 2008) ............................................................................................... 1

*Sanders v. Sanders*,
2022 U.S. App. LEXIS 31760 (2d Cir. 2022) .................................................................... 7

*Scharon v. St. Luke's Episcopal Presbyterian Hosp.*,
929 F.2d 360 (8th Cir. 1991) .............................................................................................. 3

*Shukla v. Sharma*,
2009 U.S. Dist. LEXIS 90044 (E.D.N.Y. Aug. 14, 2009) .................................................. 4

*Tewari v. Sattler*,
2024 U.S. App. LEXIS 1046 (2d Cir. 2024) ...................................................................... 2

*Wallace v. New York City Dept of Corrections*,
1996 U.S. Dist. LEXIS 22368 (E.D.N.Y. Oct. 9, 1996) ..................................................... 7

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
   127 F. Supp. 3d 156, (S.D.N.Y. 2015) ........................................................................................ 2

**Other Authorities**

FRCP 12(b)(6) ........................................................................................................................... 1, 2
FRCP 12(d) ................................................................................................................................... 7
NPCL § 715-b ............................................................................................................................... 5

## PRELIMINARY STATEMENT

Defendants St. John's Episcopal Hospital (the "Hospital"), Episcopal Health Services Inc. ("EHS"), and Asnel Valcin ("Valcin") (collectively, "Defendants") respectfully submit this Reply Supplemental Memorandum of Law in further support of their motion to dismiss the First Amended Class and Collective Action Complaint of Plaintiff Russell Davenport ("Plaintiff"), dated May 7, 2025 (the "FAC"), pursuant to the Court's December 22, 2025 Order. For the reasons discussed below, Defendants' motion to dismiss should be granted in its entirety.

## ARGUMENT

### POINT I

### THE APPLICATION OF THE MINISTERIAL EXCEPTION CAN BE DETERMINED ON A MOTION TO DISMISS

At the outset, Plaintiff argues that the application of the ministerial exception cannot be resolved on a motion to dismiss because the inquiry is too "fact intensive." This is incorrect, as there are a number of federal court decisions in the Second Circuit that have granted motions to dismiss based on a finding that the ministerial exception applies. *See, e.g.*, *Rweyemamu v. Cote*, 520 F.3d 198 (2d Cir. 2008) (affirming lower court's order granting motion to dismiss plaintiff's Title VII claim because the ministerial exception was found to bar same); *Martin v. SS Columba-Brigid Catholic Church*, 2022 U.S. Dis. LEXIS 144616 (W.D.N.Y. Aug. 11, 2022) (granting motion to dismiss plaintiff's federal and state employment discrimination claims based on a finding that the ministerial exception bars said claims); *Brandenburg v. Greek Orthodox Archdiocese*, 2021 U.S. Dist. LEXIS 102800, at *32 (S.D.N.Y. June 1, 2021) (granting motion to dismiss plaintiffs' gender discrimination and retaliation claims pursuant to the ministerial exception). Accordingly, there is nothing which precludes this Court from dismissing Plaintiff's claims pursuant to the ministerial exception.

Plaintiff further contends that the Court cannot review extrinsic materials outside of the FAC in deciding the instant motion to dismiss pursuant to FRCP 12(b)(6). In its supplemental brief, Defendants

cite to EHS's website regarding (i) EHS and St. John's religious roots; (ii) descriptions of the Pastoral Care department's mission and services; and (iii) details regarding the Clinical Pastoral Training Program (the "Program"). Citation to EHS' website is proper at this juncture, and courts in this Circuit have recognized that "for purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, (S.D.N.Y. 2015); *Louis Feraud Int'l S.A.R.L. v. Viewfinder Inc.*, 406 F. Supp. 2d 274, 277 (S.D.N.Y. 2005) ("[A]ll of the facts relevant to the resolution of the matter are contained either in the complaint, or in the materials (such as . . . the defendant's websites) that are either referred to in the complaint or of which the Court may take judicial notice."), *vacated and remanded on other grounds*, 489 F.3d 474 (2d Cir. 2007). Plaintiff does not dispute the authenticity of EHS' website or otherwise dispute the content reflected therein; Plaintiff simply would prefer that the Court not consider these materials. Accordingly, it is proper for the Court to take judicial notice of same.

     Finally, Plaintiff argues that the Court should decline to apply the ministerial exception because the ministerial exception was raised *sua sponte* such that Plaintiff was not afforded an opportunity to amend his FAC to address this particular defense. There is no authority to support this contention. While the general rule is that a motion should not be dismissed *sua sponte* without first providing a plaintiff notice and an opportunity to be heard, "dismissal without notice is permissible with it is 'unmistakably clear' that the underlying case is frivolous or the court lacks jurisdiction." *Tewari v. Sattler*, 2024 U.S. App. LEXIS 1046, at *2 (2d Cir. 2024). Here, not only did the Court properly raise the applicability of the ministerial exception, but it also provided Plaintiff with notice of the issue and an opportunity to be heard. Indeed, the Court provided Plaintiff additional opportunity by extending his time to respond by nearly three weeks. Accordingly, dismissal based on the ministerial exception is proper, and Defendants' motion should be granted in its entirety.

## POINT II

## PLAINTIFF FAILED TO MEANINGFULLY DISTINGUISH *PENN*

In Defendants' supplemental brief, Defendants demonstrated the overwhelming and indisputable similarities between the facts comprising the instant action and those comprising *Penn v. New York Methodist Hospital*, 884 F.3d 416 (2d Cir. 2018). Though Plaintiff argues that this analysis relied on "inadmissible and cherry-picked evidence," Plaintiff did not, and could not, meaningfully distinguish the facts of the two matters.

Plaintiff instead insists that *Penn* is not applicable because it has not been established that EHS is a religious group, and that the FAC merely alleges that EHS is "a part of the Episcopal Diocese of Long Island." (FAC ¶54). However, Plaintiff's reading of *Penn* is unnecessarily narrow, as "[c]ourts have also allowed hospitals to invoke the ministerial exception doctrine in employment suits from pastoral staff members." *Penn*, 884 F.3d at 424. As the court provided in *Scharon v. St. Luke's Episcopal Presbyterian Hosp.*, 929 F.2d 360, 362 (8th Cir. 1991), "[i]t cannot seriously be claimed that a church-affiliated hospital providing this sort of ministry to its patients is not an institution with substantial religious character. . . . While St. Luke's provides many secular services (and arguably may be primarily a secular institution), in its role as [plaintiff-chaplain's] employer it is without question a religious organization." The foregoing authority supports treating EHS as a religious organization. Moreover, as described above, Defendants put forth admissible and indisputable evidence from the EHS website which highlights EHS' religious roots and continued religious affiliation.

Otherwise, Plaintiff points to minor discrepancies which do not change the outcome of the analysis. For example, the fact that the Episcopal Church is not the faith of any of the chaplains described in the FAC is immaterial. Similarly in *Penn*, though the hospital was affiliated with the Methodist church, the chaplains at the hospital included a Jewish and a Catholic chaplain. *Penn*, 884 F.3d at 421. There is likewise no authority to support Plaintiff's claim that to be considered a "minister," he must be the same

3

denomination of the religious group or perform tasks specific to that denomination. Next, Plaintiff's assertion that the Clinical Pastoral Education Training Agreement is essentially an employment agreement, and that said agreement references that EHS operates St. John's Medication Services P.C., does not change the characterization of EHS as a religious organization. *See Moreno v. Episcopal Diocese*, 2016 U.S. Dist. LEXIS 16543 (E.D.N.Y. Jan. 20, 2016) (finding that defendant was a religious organization, notwithstanding the existence of a three-year employment agreement with plaintiff); *Shukla v. Sharma*, 2009 U.S. Dist. LEXIS 90044, at *18 (E.D.N.Y. Aug. 14, 2009) ("[P]laintiff has failed to cite a single authority that supports the proposition that an entity's not-for-profit status is determinative of whether it is a religious organization entitled to invoke the ministerial exception.").

Accordingly, for the reasons set forth in Defendants' supplemental brief, the analysis and holding in *Penn* are directly applicable to the instant action and support dismissal of the FAC based on the ministerial exception alone.

## POINT III

## THE FAC ESTABLISHES THAT PLAINTIFF IS A "MINISTER" FOR PURPOSES OF THE MINISTERIAL EXCEPTION

Plaintiff's contention that he is not a "minister" within the meaning of the exception because his "role and the functions he performed were substantially secular" is inconsistent with the pleadings and should be rejected. Plaintiff affirmatively boasts throughout the FAC of his religious associations, studies, and leadership roles as a Senior Pastor and Founder of two different churches. (FAC ¶¶ 48-53). Indeed, Plaintiff refers to himself throughout the FAC as "Archbishop Davenport." The FAC explicitly provides:

> Given Archbishop Davenport's status as an Archbishop, his many years of hands- on pastoral experience, his religious and secular educational credentials, his service as a law enforcement officer, his status and reputation as a widely-respected and admired figure in the community, *and his earnest desire to obtain credentials in CPE in order to advance his ministry, capacity, and qualifications to provide spiritual guidance to those in need*, Archbishop Davenport was highly qualified for the CPE program.

4

(FAC ¶ 58) (emphasis added). The FAC clearly demonstrates there is a correlation between Plaintiff's role as a chaplain resident and the religious functions he was expected to perform. Moreover, Plaintiff himself affirms that the ultimate goal of the residency was "to advance his ministry, capacity, and qualifications to provide spiritual guidance to those in need." Plaintiff also alleged that due to "his superior qualifications," he was initially informed that he was being hired as a Supervisor-In-Training (FAC ¶60), thus inferring that his superior religious qualifications were relevant to the Program.

As for Plaintiff's reframed assertion that his duties were actually a hybrid of secular and religious tasks, rather than "overtly and indisputably" religious, it is still consistent with the ministerial exception. The U.S. Supreme Court expressly rejected this argument in *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 193 (2012):

> [T]he Sixth Circuit placed too much emphasis on Perich's performance of secular duties. It is true that her religious duties consumed only 45 minutes of each work-day, and that the rest of her day was devoted to teaching secular subjects. The EEOC regards that as conclusive, contending that any ministerial exception "should be limited to those employees who perform exclusively religious functions." . . . We cannot accept that view. Indeed, we are unsure whether any such employees exist. The heads of congregations themselves often have a mix of duties, including secular ones such as helping to manage the congregation's finances, supervising purely secular personnel, and overseeing the upkeep of facilities.

The FAC thus supports the finding that Plaintiff is a minister under the ministerial exception.

**POINT IV**

**EACH OF PLAINTIFF'S CLAIMS ARE BARRED BY THE MINISTERIAL EXCEPTION**

As set forth above, Defendants have established the applicability of the ministerial exception to the instant action. For the reasons set forth in Defendants' supplemental brief, there is ample authority to support the ministerial exception's preclusion of the claims asserted by Plaintiff in the FAC.

In response, Plaintiff concludes, without meaningful analysis, that Plaintiff's sexual harassment, gender discrimination, hostile work environment, and retaliation claims (including his NPCL § 715-b) will not result in religious entanglement such that the ministerial exception should not apply. However, this argument essentially ignores the precedent set by *Penn*, in which the Second Circuit dismissed the

5

plaintiff's discrimination and retaliation claims, stating: "This application of the ministerial exception doctrine . . . properly balances the constitutional consequences of not doing so: the risk of excessive entanglement with 'ecclesiastical decisions.'" *Penn*, 884 F.3d at 426. This Court should follow the standard set by *Penn* to ensure the protections afforded by the Constitution are not impeded. *See also Fratello v. Archdiocese of N.Y.*, 863 F.3d 190 (2d Cir. 2017) (dismissing gender discrimination and retaliation claims based on the application of the ministerial exception to the former principal of a Roman Catholic school).

Plaintiff's argument as to why the ministerial exception should not preclude his Title IX claim hinges on the determination of whether EHS is a "religious group" and Plaintiff is a "minister." As set forth in this brief, since both inquiries can clearly be answered in the affirmative, Plaintiff's argument fails on its face. Plaintiff has failed to set forth any controlling authority which otherwise supports his contention that Title IX claims cannot be precluded by the ministerial exception.

Finally, Plaintiff's arguments as to why the ministerial exception should not preclude his FLSA and NYLL claims are *again* premised on the fact that EHS is not a "religious group," which Defendants once more submit is clear based on the holding in *Penn*. As such, Plaintiff's efforts to distinguish the cases cited by Defendants in their supplemental brief are inapposite, as are Plaintiff's citations to authority outside of the Second Circuit.

For these reasons, the ministerial exception should apply to bar all of Plaintiff's claims.

## POINT V

## PLAINTIFF'S REQUEST FOR LEAVE TO AMEND AND FOR CONVERSION TO SUMMARY JUDGMENT SHOULD BE DENIED

Finally, Plaintiff requests leave to amend the pleadings if the Court were to find a deficiency in the FAC. Plaintiff's request should be denied as he fails to explain how the proposed amendments would save his claims. Moreover, it would be futile, as the facts alleged conclusively show that Plaintiff's claims fall within the ministerial exception and cannot be cured by inconsistent or contradictory

6

pleading. *See Bymoen v. Herzog, Hein, Geduld, Inc.*, 1991 U.S. Dist. LEXIS 7169, at *3 (S.D.N.Y. May 24, 1991) (holding "where it appears that a plaintiff's purpose in asserting a new claim is his or her anticipation of an adverse ruling on the original claims, the court will deny leave to amend"); *Wallace v. New York City Dept of Corrections*, 1996 U.S. Dist. LEXIS 22368, at *4 (E.D.N.Y. Oct. 9, 1996) (Where a plaintiff "blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss," and "directly contradicts the facts set forth in his original complaint," the "court accepts the facts as described in the original complaint as true."). In addition, Plaintiff has already amended his complaint once before and has been unable to state a viable claim against Defendants.

With regard to Plaintiff's request that this motion be converted to one for summary, it should also be denied, as there is insufficient cause for the conversion. Conversion may occur pursuant to FRCP 12(d) only *if* "matters outside the pleadings are presented to and not excluded by the court." However, "materials that are properly subject to judicial notice are not considered matters outside the pleadings, and, as a result, consideration of such materials does not trigger the Rule 12(d) conversion." *Sanders v. Sanders*, 2022 U.S. App. LEXIS 31760, at 4 (2d Cir. 2022). Here, the materials Defendants introduced on their motion are properly subject to judicial notice, such that this motion may not be converted to summary judgment pursuant to Rule 12(d).

## CONCLUSION

Based on the foregoing and Defendants' prior briefs filed in support of their Motion to Dismiss, Defendants respectfully request that the Court grant their motion to dismiss the Plaintiff's First Amended Complaint, together with such other and further relief as the Court deems just and proper.

Dated: January 12, 2026                                    BOND, SCHOENECK & KING, PLLC


By: __/s/ Rebecca K. Kimura_____
    Rebecca K. Kimura, Esq.
    Mary Ellen Donnelly, Esq.
    Sabrina Salama, Esq.
    *Attorneys for Attorneys for Defendants*
    600 Third Avenue, 22nd Floor
    New York, New York 10016
    rkimura@bsk.com
    (646) 253-2300

## **CERTIFICATION**

The undersigned, an attorney duly admitted to the bar of this Court, hereby certifies under the penalty of perjury that the foregoing Memorandum of Law contains 2,381 words (excluding the Cover Page, Table of Contents, and Table of Authorities), and complies with Rule 7.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, effective January 2, 2025.

                                                                  */s/ RKK*
                                                        Rebecca K. Kimura, Esq.